**Henry v. Babecki**

*Benjamin Paul,* for plaintiffs.
*Henry I. Jacobson,* for defendant.

TAKIFF, J., February 19, 1974.—These are two actions arising out of the purchase and sale of premises 1814 Griffith Street wherein plaintiffs, James T. Henry and Regina D. Henry, his wife, were the purchasers, defendants Gottlieb Babecki and Ida Babecki, his wife, were the sellers, and defendant, Richard J. Cortese, was the broker. The first action, brought in assumpsit against all defendants, alleged that Mr. and Mrs. Babecki sold plaintiffs a house and concealed from them the fact that it was infested with termites. It sought damages for the elimination of the termites and the repair of the termite damage. In the same action, defendant Cortese is identified as the representative of both the buyer and the seller and alleged that he knew, or should have known, of the presence of the termite damage and its concealment but failed to disclose that knowledge to plaintiffs and, hence, is claimed to be liable for the same damage.

Defendants Babecki filed a responsive pleading denying the essential averments of the complaint and specifically denying that defendant Cortese acted in any manner as their agent in this transaction but, to the contrary, acted solely as the agent of plaintiffs at all material times. Defendant Cortese similarly denied that he acted at any time on behalf of defendants and asserted to the contrary that pursuant to the terms of the written agreement of sale executed by plaintiffs he acted for and on their behalf. Further, he denied any knowledge or reason to have knowledge of the presence of termites in the property or damage resulting therefrom and denied any liability in connection therewith.

The second action, brought in equity by plaintiffs against Mr. and Mrs. Babecki alone, averred the same factual basis as in the assumpsit action, sought rescission of the transaction and the return to plaintiffs of

all sums paid by them for the purchase of the property and all carrying charges expended for mortgage principal, interest and other expenditures made in connection therewith.

From an award made by arbitrators in the assumpsit matter, defendants appealed. Preliminary objections to the complaint in equity were dismissed. Both matters were, therefore, listed concurrently for hearing, nonjury.

After hearing held and upon consideration of findings of fact and conclusions of law filed by the parties, the court makes the following

## FINDINGS OF FACT

1. Plaintiffs, James T. Henry and Regina D. Henry, are husband and wife, presently residing at 1814 Griffith Street, Philadelphia, Pa.

2. Defendants, Gottlieb Babecki and Ida Babecki, are individuals residing at 5060 Homestead Street, Philadelphia, Pa.

3. On or about December 1969 plaintiffs, having sold their former dwelling and seeking to purchase another one, contacted Richard J. Cortese, a duly licensed real estate broker, who had represented them in the sale of their former home, to assist them in finding a suitable house.

4. Mr. Cortese, having received information through a multiple listing service that premises 1814 Griffith Street, Philadelphia, a single-family, frame dwelling then over 50 years of age, situate on a lot 50 feet by 107 feet, was being offered for sale on behalf of the owner-defendants herein, communicated this information to plaintiffs and made arrangements with Dydak Realty Company, the listing broker, for an inspection of the house by plaintiffs.

5. Defendants, who had owned the said property since October of 1967, had listed it for sale with Dydak Realty Company in November 1969.

6. The property was not occupied when defendants purchased it and remained vacant thereafter and until plaintiffs moved in after settlement.

7. After defendants purchased the said property, Mr. Babecki made, and caused to be made, certain alterations and repairs to the premises. Among the repairs so performed were the replacement of the heating system, new electric wiring, new copper piping, replacement of the original main wooden beam which went lengthwise down the center of the basement with a metal or steel beam; replacement of a portion of the kitchen floor; new linoleum on the kitchen, whitewashing of the masonry walls in the basement and removal of rear shed attached to the house.

8. None of the overhead beams in the basement were whitewashed and all except the metal beam were of natural wood color. New wooden flooring installed in the kitchen area was also left unpainted.

9. Defendant purchased and repaired the property for his own use and occupancy but elected to place it on the market for sale after he was unsuccessful in selling his residence at 5060 Homestead Street where he has lived with his wife, 72 years of age at the time of trial, for over 20 years.

10. Prior to their purchase, plaintiffs, with Mr. Cortese on one occasion and his associate on another, visited and inspected the said premises. At no time were defendants present while the property was inspected by plaintiffs.

11. On the first visit, plaintiffs inspected the first floor, the basement and the attic. While on the first floor, plaintiffs observed the new linoleum in the

kitchen. While in the basement, they saw the white-washed walls and new heater. The electric lighting was very poor in the basement, although it contained six glass windows in wooden frames.

12. On the second visit, plaintiffs visited the home primarily to measure the rooms and decide how their furniture would fit. On this visit, they again went into the basement.

13. Plaintiffs never requested that the basement should be further illuminated so that they could have a closer or better look at its condition.

14. On or about January 17, 1970, after an earlier offer in a lesser amount had been rejected, plaintiffs agreed to purchase and requested defendant Cortese to prepare an agreement of sale stating a consideration of $16,000 and to deliver same to the listing broker as their written offer. That agreement identified Dydak as agent for the sellers and Richard J. Cortese as agent for the buyers for purposes of negotiating the procurement of a mortgage which was a condition to the agreement of sale.

15. Defendants Babecki accepted plaintiffs' offer and on January 30, 1970, settlement was completed without incident.

16. Plaintiffs originally sought to purchase the property with an FHA insured mortgage but the application for such financing was rejected by FHA solely by reason of the design of the house, access to the bathroom from the bedroom was through the living room or dining room, and not because of the physical condition of the property. The property was thereafter inspected by a conventional mortgage lender and approved.

17. Mr. Cortese read and explained the agreement of sale, which he had prepared, to plaintiffs before they signed it. Plaintiffs were told by Mr. Cortese that in

his opinion the house was a good buy but that he knew nothing specifically of the condition of the property.

18. Mr. Cortese did not consider it necessary or advisable to insert any special clauses in the form of agreement of sale which he used relating to termites, plumbing, roofing or other certifications or warranties.

19. At no time either prior or during the settlement had plaintiffs requested Mr. Cortese or any one else to obtain for them a termite certificate or to have a clause relating to termites put into the agreement of sale. The agreement of sale required the sellers to produce a certification statement from the City of Philadelphia that there were no violations of the Regulations of the Department of Licenses and Inspections and such was produced for the buyers.

20. Neither the agreement of sale nor the deed make any reference whatsoever to termites or a termite certificate.

21. Prior to the settlement plaintiffs had no conversations whatsoever with defendants or anyone from Dydak Realty. Cortese acted as agent for plaintiffs in the sale of their prior residence. He was compensated by them for attendance at settlement and for conveyancing in connection with the subject property and received a commission on the title insurance, the premium for which was paid by plaintiffs. In addition, he participated in the brokerage fee of Dydak Realty by receiving a portion of that fee from Dydak.

22. At settlement, when plaintiffs and defendants first met, there was no conversation between them relative to the property or its condition except that Mr. Babecki volunteered to explain to plaintiffs how to operate the new heater which he had caused to be installed.

23. No representations with regard to either structural soundness or infestation of termites were ever

made by defendants to plaintiffs or their agent, Cortese.

24. At all times it was Mr. Cortese or his associate who arranged for plaintiffs to inspect the premises, prepared the agreement of sale, negotiated the price, submitted the offer, arranged for financing and attended settlement with plaintiffs.

25. Some time shortly after the settlement, plaintiffs discovered the presence of termites at the said premises.

26. Following the discovery of the infestation, plaintiffs called an exterminator who on two occasions came to their home and removed all active termites. The charge for this work by the exterminator was $192. Since that time, there has been no further evidence of active termite infestation.

27. Plaintiffs also called a contractor, John Burin, who had experience with termites, to inspect for termite infestation and give them an estimate for repairs of the alleged termite damage.

28. The contractor so procured was of the opinion that certain of the joists in the basement, portions of the staircase leading down to the basement, the wood plates on the top of the exterior masonry foundation and the basement windows had suffered damage due to infestation of termites. He estimated that it would require an expenditure of about $2,920 to replace and/or repair the portions of the property which had been damaged by termites.

29. Plaintiffs still reside in the said house and have not done, or caused to be done, any replacement of the parts alleged as damaged by termite infestation.

30. Plaintiffs have made repairs on certain portions of the house which were not termite infested, such as the front masonry steps.

31. Defendants did not, by any of the repairs done

or caused to be done, attempt to conceal termite damage. Defendants did not have knowledge of the existence of termites or the infestation of any parts of the structure by termites.

32. Plaintiffs filed suit seeking damages only, in June of 1970, and later filed the action in equity for rescission in June of 1971, approximately 18 months after settlement, with no prior demand upon defendants for rescission.

## ISSUES OF LAW

1. Were plaintiffs induced to enter into the purchase of the said house by means of an intentional concealment or misrepresentation knowingly made by defendants?

2. Was there sufficient evidence presented by plaintiffs for a court of equity to overcome and void Clause 13 of the agreement of sale which states that:

"It is understood that Buyer has inspected the property and he has agreed to purchase it as a result of such inspection and not because of or in reliance upon any representation made by the Seller or any officer, partner or employee of Seller, or by the agent of the Seller or any of the latter's salesmen and employees, or by a cooperating broker, if any, or any of his salesmen and employees and that he has agreed to purchase it in its present condition unless otherwise specified herein. It is further understood that this agreement contains the whole agreement between the Seller and the Buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this sale."

3. Are plaintiffs entitled to damages from defendants or either of them for the costs of repair of damage caused to the structure by termite infestation?

## DISCUSSION

Plaintiffs allege that because of a material misrepresentation they are entitled to damages and/or to rescission of their agreement of sale on the subject premises. Misrepresentation can be proven from either the written or verbal statements of seller or by proof of affirmative acts which are tantamount to actual concealment of defects in the property to be sold and which are calculated to deceive the buyer. In Richardson v. Walsh, 23 D. & C. 2d 240 (1960), where plaintiffs sought rescission of an agreement of sale of real estate, the court stated, at pages 242-43, that:

"The law is clear that when one is induced to enter into a transaction with another by means of a material misrepresentation or fraud, the innocent party may avoid the transaction. If there is an intentional concealment or a misrepresentation knowingly made, the contract can be avoided, although the misrepresentation is not material. When, however, the misrepresentation is innocently made, it must be material, and the innocent party must have relied upon it."

In Richardson, supra, the court was concerned with an alleged misrepresentation made by the seller's representative or agent in both a newspaper advertisement and in answer to questions about the structural soundness of the premises. Plaintiffs averred that because of these misrepresentations, they purchased the home which was later found to be termite infested. The court then held, at pages 244-45, that plaintiffs had failed to sustain their burden of proof and were not entitled to equitable relief. In the instant case, there is no question that defendants or their agents made any representation whatsoever about the condition of the premises. Hence, recovery cannot be allowed under the theory of misrepresentation.

With regard to concealment, in Garofalo v. Carideo,

75 Montg. 322 (1959), where plaintiffs sought rescission of an agreement of sale, or, in the alternative, damages for repairs and expenses incidental to correction of the termite condition and for depreciation in value to the property, the court stated at pages 325 and 326:

" 'Fraud' embraces 'concealment' which is 'any affirmative act likely to prevent knowledge of a fact': Restatement, Contracts §471, com. f. 'Fraud arises where . . . there is a concealment calculated to deceive': DeJoseph v. Zambelli, 73 Montg. Co. L.R. 434, 438 (1957), affirmed by the Supreme Court, per curiam in 392 Pa. 24 (1958), and where the concealment is of a material matter, i.e., where it is of such a character that if it had not been done, the transaction would not have been entered into. This view finds support in the Restatement, Torts §550: 'One party to a business transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other as though he had stated the nonexistence of the matter which the other was thus prevented from discovering.'

"Comment (a) of the above-mentioned §550, states the law specifically applicable to this case: '. . . Thus, a defendant is liable for a fraudulent misrepresentation if he paints over and so conceals a defect in a chattel or building which he is endeavoring to sell to the plaintiff and thus induces the plaintiff to purchase it in ignorance of its defective character.'

"In Croyle v. Moses, 90 Pa. 250, 252 (1879), the court stated: 'But fraudulent representations may be as well by arts or artifices calculated to deceive, as by positive assertions: 2 Kent's Com. 483; 1 Story's Eq., §192; Brightly's Eq., §55; Cornelius v. Molloy, 7 Barr 293.' "

In Garofalo, supra, the court was presented with

proof of the concealment of termite infestation by the painting of joists and by the use of plastic wood to fill in the holes created by termites in the joists. Plaintiffs alleged that, by the above artifices, they were deceived and misled by plaintiffs into purchasing a termite infested property. In that case, the court held, at page 329, that the said artifices, intentionally employed by defendants, prevented plaintiffs from acquiring material information and thus induced plaintiffs to purchase the real estate in ignorance of its defective character.

The facts as presented to this court indicated that Mr. Babecki did do certain alterations to the dwelling but there was a total lack of any credible evidence that this alteration was in any manner an artifice calculated to deceive and mislead plaintiffs. There was no credible evidence, as was proven in Garofalo, supra, that defendants had any prior knowledge of termites, that plaintiffs had ever inquired of defendants or anyone authorized to act or speak on their behalf about termites, or that defendants ever demonstrated by word or act a knowledge of termite infestation. Further, there was no proof that the repairs which were done to the house prior to its purchase by plaintiffs in any way hindered a careful inspection of the premises by plaintiffs or acted as a shield to any damaged condition thereof. Therefore, the evidence necessary for a finding of concealment was not present.

Another aspect of this matter deals with the effectiveness of Clause 13 of the agreement of sale which basically states that the agreement of sale contains the whole agreement between the parties. It is the court's opinion that the oral testimony failed to establish any circumstances which should or could effect a variance or deviation from the terms of the written

agreement. Since there was never any oral discussion or representation of any kind between the parties and no mention of termites appears in the agreement of sale, there is no compelling reason shown to deviate from the explicit language of the agreement of sale.

In their requests for findings of fact and conclusions of law, plaintiffs assert an implied warranty by defendants Babecki that the house was fit for habitation and for the use for which plaintiffs intended it, namely a house suitable for family occupancy and the breach of such warranties. Unlike a newly constructed house, where certain warranties have been raised by implication, research has failed to disclose any precedent extending that concept to an existing structure nor does any persuasive reason of public policy impel the extension of such an implied warranty into a transaction between a private buyer and seller of real estate.

The thrust of the claim against the real estate broker, Cortese, is to impose upon one who agrees to assist a client in locating a house, drafting for that person several agreements of sale and attending to the details of settlement, an implied contractual obligation to know or have reason to know of the condition of the property and to communicate such knowledge to his client. The imposition of such a duty is unprecedented. There was no credible evidence upon which the court can find an express undertaking to provide expertise as to the physical quality of the property and there is no precedent brought to the attention of the court to find the existence of such a duty by implication.

A final element in this litigation involves the propriety of equitable relief of rescission which is presently sought. Plaintiffs have, since their purchase of the property, exercised dominion over it even to the

extent of making repairs to areas other than those infested. Further, although a suit for damages was filed some five or six months after the closing date, the suit for rescission was not filed until over 17 months after the closing. Therefore, since plaintiffs, after acquiring knowledge of the alleged fraud, delayed unreasonably in giving legal notice of the intention to rescind and also because of the exercise of dominion after the alleged defective condition was discovered, we conclude that rescission is totally inappropriate here, even if the facts alleged were proved. See Garofalo v. Carideo, supra.

## CONCLUSIONS OF LAW

1. Plaintiffs were not induced to enter into the purchase of the said house by means of an intentional concealment or a misrepresentation knowingly made by the defendants.

2. There was insufficient evidence presented by plaintiffs for a court of equity to overcome and void clause 13 of the agreement of sale which states that:

"It is understood that Buyer has inspected the property and he has agreed to purchase it as a result of such inspection and not because of or in reliance upon any representation made by the Seller or any officer, partner or employee of Seller, or by the agent of the Seller or any of the latter's salesmen and employees, or by a cooperating broker, if any, or any of his salesmen and employees and that he has agreed to purchase it in its present condition unless otherwise specified herein. It is further understood that this agreement contains the whole agreement between the Seller and the Buyer and there are no other terms, obligations covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this sale."

3. The court finds in favor of defendants in the action in assumpsit, being James T. Henry and Regina D. Henry, his wife, v. Gottlieb Babecki and Ida Babecki, his wife, and Richard J. Cortese, Court of Common Pleas, June term, 1970, no. 6347.

## DECREE NISI

And now, February 19, 1974, the court enters a verdict in favor of defendants and against plaintiffs in the matter of James T. Henry and Regina D. Henry, his wife, v. Gottlieb Babecki and Ida Babecki, his wife, Court of Common Pleas, June term, 1971, no. 3685.

Each party shall bear own costs.

The prothonotary is directed to enter this decree nisi and to give notice thereof to the parties or their counsel of record. If no exceptions are filed within 20 days thereafter, the decree nisi shall be entered as the final decree by the prothonotary, as of course.