## Boozell v. Bollinger

*Michael John Wherry,* for plaintiff.
*Milford L. McBride, III,* for defendant.

ACKER, *J.,* November 15, 1983—This matter comes before this court upon a preliminary objec-

tion in the nature of a demurrer to the second count of plaintiffs' complaint. Count two is in assumpsit. It incorporates the allegations of the first count.

On the first day of March, 1982, plaintiffs entered into a uniform sales agreement concerning a house and 12 and one-half acres of land, more or less, located in Pine Township, Mercer County. On April 13, 1982, the parties executed an article of agreement dealing with the same property. Plaintiffs moved into the residence on May 1, 1982. Three weeks after moving into the premises, plaintiffs found that there was insufficient water for the performance of normal household chores and baths. Plaintiffs installed a new pump, but it did not solve the problem on a long-term basis.

Plaintiffs determined that with their present well, it took two days to replenish the water supply. Ultimately, on July 8, 1982, plaintiffs engaged a well-drilling company and a much deeper well was dug which solved plaintiff's water problems. During the course of the difficulties plaintiffs talked to defendant at about the end of July. Defendant advised plaintiffs that she had run out of water, but that she simply waited a couple of days for the well to refill. It is asserted that defendant had specific knowledge of the defective well on the property where she had lived for some time, and that she did not advise her real estate agent of this fact. It is claimed that the defect was material and was not ascertainable to plaintiffs. The first cause of action is, therefore, in trespass demanding judgment for the cost of digging a new well.

The second cause of action, being in assumpsit, to which the demurrer had been filed, asserts that defendant violated her implied contract that the property she was selling was habitable, by concealing knowledge of the defective well. Attached to the

complaint is the uniform sales agreement of March 1, 1982, and the article of agreement of April 13, 1982, both of which are referred to in the pleadings. Through defendant's demurrer, lines 37 through 39 of the sale agreement is referred to. Therein, it is provided,

It is understood between the parties hereto that the buyer has completely inspected the property herein described, either personally or by his agent, and that the same is being purchased as a result of such inspection and not upon any representations made by the seller or any agent of the seller or other person.

The pleadings also demonstrate that the defendant was not a builder-vendor. Plaintiff through Paragraph 21 of the second count of the complaint describes the obligations as an "implied contract." Wherefore, the demurrer contends that there is no warranty implied by law.

A demurrer admits all well-pleaded facts contained in the complaint, as well as all reasonably deductible facts therefrom. Stein v. Richardson, 302 Pa. Super. 124, 448 A.2d 558 (1982); McKinney v. State Farm Mutual Auto Insurance Company, 295 Pa. Super. 319, 441 A.2d 1252 (1982).

In order to sustain a demurrer, it is essential that the plaintiff's Complaint indicate on its face that the claims cannot be sustained, and that the law will not permit recovery. Modesta v. Southeastern Pennsylvania Transportation Authority, 300 Pa. Super. 6, 445 A.2d 1271 (1982).

Defendant by brief and oral argument concedes that no Pennsylvania case has extended the doctrine of Elderkin v. Gaster, 447 Pa. 118, 288 A.2d 771 (1972) to include sales by an owner who is not a builder-vendor. The Elderkin case also involved a water supply furnished to a country home from a

private well. Defendant contended that any warranties as to the quality of the water had to be expressed in the deed. It was further contended that the implied warranty that a structure will be completed in a workmanlike manner and be reasonably fit for the purpose intended applies only to completing a functional well, and does not extend to the purity of the water produced by the well.

The court concluded, for the first time in Pennsylvania, that a builder-vendor must furnish a potable water supply which is essential to any functional living area, for without drinking water, the house cannot be used for the purpose intended. Subsequently, the implied warranty of habitability was extended to the relationship between a landlord and tenant. Pugh v. Holmes, 486 Pa. 272, 405 A.2d 897 (1979). Efforts to extend the implied warrant of habitability to other factual situations have been denied in a series of lower court decisions.

In Kline v. Johnson, 70 D.&C. 2d 386 (1975), it was held that in cases not involving new homes, the long existing rule of caveat emptor applies to a suit by the purchaser against the builder-vendor. This is discussed in Elderkin, footnote 14, wherein it is noted that the doctrine still applies in real estate sales. There it is noted that by the general rule, in the absence of fraud or misrepresentation, a vendor is responsible for the quality of the property sold by him only to the extent for which he expressly agrees to be responsible. The theory behind this rule is that the buyer and seller deal at arm's length, each with equal means of knowledge concerning the subject of the sale and that, therefore, the buyer should be afforded only those protections for which he specifically contracts.

In Frisch v. Fernwood Terrace, Inc., 16 D.&C. 3d 311 (1980), Wieand, J., now of the Superior Court,

but then specially presiding, thoroughly reviewed Elderkin and Pugh v. Holmes, supra, in a case where it was claimed water had seeped into a basement due to a defective construction of a residence. It was held there was no implied warranty where the builder-vendor sold a "single package" of a new house and lot to his customer where the dwelling was not rendered uninhabitable. The court refused to impose absolute liability upon a contractor for water entering a basement. The court noted that plaintiffs were the owners of the building lot and they could negotiate their own agreement with any contractor they selected to construct the home. In selecting defendant and in preparing the contract, they were able to negotiate those warranties which they desired. It was concluded that the rights of the parties had to be determined by the written agreement, and that the court could not rewrite the parties' agreement by inserting a warranty which the parties had expressly excluded.

The court refused to accept the contention that a waiver is against public policy and should be permitted because of an unequal bargaining power between the developer-vendor and vendee.

The doctrine of implied warrant of habitability of Elderkin was refused to be extended in Best v. Hammill Quinlan Realty Co., Inc., 18 D.&C. 3d 31 (1980).

In Henry v. Babecki, 65 D.&C. 2d 4 (1974), it was held that there was no implied warranty that an older residence was fit for habitation. Further, the court concluded that there was no persuasive reason of public policy to compel the extension of such an implied warranty into a transaction between a private buyer and a private seller of real estate. We agree with that conclusion and sustain the demurrer.

## ORDER

And now, this November 15, 1983, it is hereby ordered and decreed that the demurrer filed in this case is sustained as to the second cause of action of plaintiff's complaint.