**Michael and Deborah CONWAY, h/w, Appellants**

v.

**The CUTLER GROUP, INC. d/b/a The David Cutler Group, Inc., Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 12, 2012.

Filed Nov. 5, 2012.

Christopher A. Bradley, North Wales, for appellants.

Paul R. Rosen, Philadelphia, for appellee.

BEFORE: MUSMANNO, J., MUNDY, J., and McEWEN, P.J.E.

OPINION BY MUNDY, J.:

Appellants, Michael and Deborah Conway (the Conways), appeal from the February 15, 2012 order, granting the preliminary objections filed by Appellee, The Cutler Group, Inc. (Builder), and dismissing their complaint. After careful review, we reverse and remand for further proceedings.

We summarize the relevant factual and procedural history of this case as follows. In September 2003, Builder constructed a home for David and Holly Fields (the Fields) on Lot 33 of the Estates of Warwick Lea subdivision in Jamison, Pennsylvania. Conways' Complaint, at ¶ 8, 9. The Conways purchased said home from the Fields in June 2006. *Id.* at ¶ 8. In April 2008, the Conways discovered water infiltration around the windows of their master bedroom. *Id.* at ¶ 10. The Conways retained the Falcon Group, an engineering and architecture firm to assess the water infiltration problems. *Id.* at ¶ 13. Mark McCann of the Falcon Group inspected the Conways' home and prepared a report in which he concluded that the home suffered from several defects. These defects included that the roof eave to wall junctures did not have the proper "kick-out" flashing, there were insufficient sealed expansion joints, there was a lack of expansion or control joints, a lack of weep screed, and the stucco improperly stopped too tight relative to head flashings located

above various windows and doors. *Id.* at ¶ 14; *see also* Conways' Complaint, Exhibit A, at 5–10. McCann concluded that the best course of action for the home long term would be "a complete stripping off of the entire home...." Conways' Complaint, Exhibit A, at 11.

On June 20, 2011, the Conways filed a one count complaint against Builder asserting a breach of the implied warranty of habitability. The Conways did not name the Fields in their complaint. Nor did the Conways assert any claim regarding breach of contract. Builder filed preliminary objections on August 4, 2011. Builder's preliminary objections asserted, "as a matter of law, the implied warranty of habitability only extends from the builder to the initial third-party purchaser." Builder's Preliminary Objections, 8/4/11, at ¶ 5. In addition, Builder asserted that even if the implied warranty of habitability did extend beyond the initial buyer, the Conways failed to plead that any of the alleged defects rendered their home unfit to live in. *Id.* at ¶ 13. As a result, pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4), Builder requested that the trial court dismiss the Conways' complaint with prejudice because the Conways "cannot plead a cognizable cause of action against [Builder] for breach of the implied warranty of habitability...." *Id.* at ¶ 6, 13. On February 15, 2012, the trial court entered an order granting Builder's preliminary objections and dismissing the Conways' complaint with prejudice. Trial Court Order, 2/15/12, at 1. On February 27, 2012, the Conways' filed a motion for reconsideration, which was denied on March 20, 2012.

On March 15, 2012, the Conways filed a timely notice of appeal.[1]

On appeal, the Conways raise two issues for our consideration.

1. Whether the [t]rial [c]ourt erred by dismissing [the Conways]' [c]omplaint on the grounds that only the initial purchaser of a home from the builder/vendor may maintain a cause of action for breach of the implied warranty of habitability against [Builder], and that [the Conways] could not maintain such an action because they bought the home from previous homeowners and not directly from [Builder?]

2. Whether the [t]rial [c]ourt erred by dismissing [the Conways]' [c]omplaint alleging breach of implied warranty of habitability for [the Conways]' failure to plead that they retained a third-party company to inspect their home prior to purchase, or to plead that the construction defects rendered their home uninhabitable, or to otherwise plead the cause of action of breach of implied warranty of habitability where [the Conways] did repeatedly allege that their home is uninhabitable[?]

Conways' Brief at 2.[2]

■ We begin by noting our well-settled standard of review.

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The

1. The Conways and the trial court have complied with Pa.R.A.P. 1925.

2. Although the trial court did not indicate in its February 15, 2012 order the basis upon which it dismissed the Conways' complaint, the trial court clarified in its Rule 1925(a) opinion that it was dismissing the Conways' complaint based on a lack of privity, as raised in their first issue on appeal. *See* Trial Court Opinion, 4/18/12, at 3–8.

impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.

*Floors, Inc. v. Altig,* 963 A.2d 912, 915 (Pa.Super.2009) (citation omitted), *appeal denied,* 602 Pa. 667, 980 A.2d 608 (2009).

This case addresses a question of first impression in this Commonwealth regarding the applicability of the implied warranty of habitability. Our Supreme Court first recognized the implied warranty of habitability in *Elderkin v. Gaster,* 447 Pa. 118, 288 A.2d 771 (1972). In *Elderkin,* our Supreme Court recognized that the implied warranties of habitability and reasonable workmanship were necessary to equalize the disparate positions of the builder-vendor and the average home purchaser by safeguarding the reasonable expectations of the purchaser who is compelled to depend upon the builder-vendor's greater manufacturing and marketing expertise. *Id.* at 776–777; *see also Tyus v. Resta,* 328 Pa.Super. 11, 476 A.2d 427, 431 (1984). In recognizing the implied warranty of habitability, the *Elderkin* court stated the following.

In *Kellogg Bridge Co. v. Hamilton,* 110 U.S. 108 [3 S.Ct. 537, 28 L.Ed. 86] (1884), the Supreme Court, speaking through the first Mr. Justice Harlan, stated that the law will imply a warranty of fitness for the purpose intended when a buyer has reason to rely upon and does rely upon the judgment of a seller who manufactures the product. We

have concluded that one who purchases a development house conforms to this standard; he justifiably relies on the skill of the developer that the house will be a suitable living unit. Not only does a housing developer hold himself out as having the necessary expertise with which to produce an adequate dwelling, but he has by far the better opportunity to examine the suitability of the home site and to determine what measures should be taken to provide a home fit for habitation. As between the builder-vendor and the vendee, the position of the former, even though he exercises reasonable care, dictates that he bear the risk that a home which he has built will be functional and habitable in accordance with contemporary community standards. We thus hold that **the builder-vendor impliedly warrants that the home he has built and is selling is constructed in a reasonably workmanlike manner and that it is fit for the purpose intended-habitation.**

*Elderkin, supra* at 776–777 (emphasis added).

■ The implied warranty of habitability is a creation of public policy, recognizing that in home sales "[s]tandard form contracts are generally utilized and '[e]xpress warranties are rarely given, expensive, and impractical for most buyers to negotiate.'" *Tyus, supra* at 433. The implied warranty of habitability removes certain latent construction defects from the doctrine of *caveat emptor* and shifts the risk of those defects to the builder. *Id.; see also Elderkin, supra* at 776 (stating, "[t]he caveat emptor rule as applied to new houses is an anachronism patently out of harmony with modern home buying practices. It does a disservice not only to the ordinary prudent purchaser but to the industry itself ...") (citation omitted).

[I]t seems only fair to put the burden of repairing defects in construction on the person who is (1) responsible for the defects, (2) is in a position to repair them and (3) is in a position to spread the costs of the repair. This is especially true since a significant amount of the defects can be so buried in the construction that it could be impossible to find them before buying, no matter how careful or thorough the inspection.

*Tyus, supra* at 431 n. 3 (citation omitted). The implied warranty of habitability covers "[d]efects which would not be apparent to the ordinary purchaser as a result of a reasonable inspection." *Id.* at 433. While "a reasonable pre-purchase examination of the premises by the intended purchaser [and] not by an expert" is required, "a reasonable inspection does not necessitat[e] 'a minute inspection of every nook and cranny.'" *Id.* (citations omitted). "[T]o the contrary, the requisites of a reasonable inspection vary with the circumstances of the individual case." *Id.*

■ It is certainly true that the implied warranty of habitability is triggered by a contract for a sale of a newly built home. *See Fetzer v. Vishneski,* 399 Pa.Super. 218, 582 A.2d 23, 25 (1990) (stating, "[t]he warranty of habitability is implied by law into every contract for the sale of a new home[ ]"), *appeal denied,* 527 Pa. 666, 593 A.2d 842 (1991). However, the warranty is based upon public policy considerations and is not a contractually dependent remedy. As the Supreme Court of Illinois succinctly put it, "[w]hile the [implied] warranty of habitability has roots in the execution of the contract for sale ... it exists independently." *Redarowicz v. Ohlendorf,* 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324, 330 (1982). The implied warranty of habitability is "not created by representations of the builder-vendor but rather [is] implied in law and as such

exist[s] independently of any representations of a builder-vendor." *Tyus, supra* at 433 (citation omitted). In other words, the implied warranty of habitability exists even in the absence of a contract between the builder and the homeowner.

This Court has previously held, "privity of contract is not required to assert a breach of warranty claim against the builder of a new residential unit." *Spivack v. Berks Ridge Corp.,* 402 Pa.Super. 73, 586 A.2d 402, 405 (1990) (citations omitted). In *Spivack,* the appellants purchased a condominium from a vendor who had purchased it from the builder. *Id.* at 404. We reasoned that by selling the condominiums to the vendor, the builder knew or should have known "that [the vendor] will not be the first user ..." of the condominium. *Id.* at 405. As a result, the *Spivack* court concluded the appellants may sue the builder for a breach of the implied warranty of habitability despite there not being any contract between them. *Id.*

However, with regard to the breach of warranty action, we hold the trial court erred in its dismissal and, accordingly, reverse. Privity of contract is not required to assert a breach of warranty claim against the builder of a new residential unit. In [*Elderkin*], our Supreme Court ruled that a builder/vendor impliedly warrants that the house he has built and is selling is constructed in a reasonable workmanlike manner and that it is fit for habitation. Such warranties arise by operation of law, independent of any contractual representations. **Although this Court has not heretofore ruled on whether implied warranties extend from a builder of a residential unit to the initial purchaser-user when the builder is not also the seller, logic requires such a finding. This Court having previously found an implied warranty exists from the builder/vendor of a new**

house to his vendee (herein the developer), sees **no logical reason to limit the builder's warranty to his immediate vendee.** Where the builder knows or should know that that particular purchaser will not be the first user, as in the instant matter, any implied warranties must necessarily extend to the first user-purchaser, herein the appellants. Warranties of habitability and reasonable workmanship are not created by representations of the builder/vendor but rather are implied in law and, as such, exist independent of any representations of a builder/vendor.

*Id.* (internal citations omitted; emphasis added). Consistent with this Court's rationale in *Spivack*, we see "no logical reason to limit a builder's implied warranty to his immediate vendee." *Id.*

■ As both parties note, Pennsylvania appellate courts have never considered the issue of whether the implied warranty of habitability extends beyond the initial user-purchaser of a home to a second or subsequent purchaser.[3] Builder argues that the Conways' claim was properly dismissed because it was not in privity with the Conways. Builder's Brief at 8. On the contrary, the Conways argue that "privity of contract [is] not required for a homeowner to assert a breach of implied warranty of habitability against the builder/vendor." Conways' Brief at 5.

Builder directs this Court to *Manor Junior Coll. v. Kaller's, Inc.,* 352 Pa.Super. 310, 507 A.2d 1245 (1986). In *Manor Junior College,* the appellant (the College) hired a builder (Kaller's) to install a new roof on one of its buildings pursuant to a written contract. *Id.* at 1246. Kaller's then subcontracted the roofing work to John J. Spencer Roofing, Inc. (Spencer) pursuant to an oral agreement. *Id.* This Court concluded the College could not recover against Spencer for a breach of the implied warranty of workmanlike performance because the College was not in privity of contract with Spencer. *Id.* at 1249.

We conclude that *Manor Junior College* is distinguishable from the present case. In that case, the College was asserting a breach of the implied warranty of workmanlike performance; whereas in this case, the Conways are asserting a breach of the implied warranty of habitability. *See Manor Junior Coll., supra* at 1249. Our Supreme Court has recognized that these two warranties are not the same. *See Elderkin, supra* at 775 (stating, "[i]n *Stewart v. Trimble,* 15 Pa.Super. 513 (1901) and *Raab v. Beatty,* 96 Pa.Super. 574 (1929) our Superior Court held that a builder-vendor impliedly warrants good workmanship in the completion of what was at the time of sale a partially constructed building. Neither of these decisions involved an implied warranty of hab-

---

**3.** We observe that the Courts of Common Pleas are deeply divided on this issue. The Conways point us to several trial court decisions that have allowed subsequent purchasers to pursue claims against builders for breaches of the implied warranty of habitability. *See Kapetanovich v. Fox,* 20 Pa. D. & C.4th 316 (Allegheny 1993); *Moyer v. White,* 48 Pa. D. & C.3d 487 (Dauphin 1988); *Galbraith v. McLaughlin,* 44 Pa. D. & C.3d 70 (Erie 1986); *Spencer v. Leo S. Firanski & Son, Inc.,* 67 Pa. D. & C.2d 235 (Washington 1974). However, other counties have not allowed such claims. *See Beall v. Inskip,* 1 Pa.

D. & C.4th 432 (Adams 1987); *Boozell v. Bollinger,* 30 Pa. D. & C.3d 247 (Mercer 1983); *Best v. Hammill Quinlan Realty Co.,* 18 Pa. D. & C.3d 31 (Washington 1980); *Kline v. Johnson,* 70 Pa. D. & C.2d 386 (Northumberland 1975); *Henry v. Babecki,* 65 Pa. D. & C.2d 4 (Philadelphia 1974). We note, however, that "common pleas court decisions are not binding on appellate courts." *Branham v. Rohm and Haas Co.,* 19 A.3d 1094, 1103 (Pa.Super.2011), *appeal denied,* —— Pa. ——, 42 A.3d 289 (2012), *citing U.S. Bank Nat'l Ass'n v. Powers,* 986 A.2d 1231, 1234 n. 3 (Pa.Super.2009).

itability ...”). We also note that unlike this case, the College did have a written contract with its contractor and in fact, was attempting to assert that it was a third-party beneficiary of the oral contract between Kaller's and Spencer. *Manor Junior Coll., supra* at 1246. Furthermore, recognizing that our Supreme Court has been silent on the precise issue presented in this case, we find the policy considerations advanced by the Conways and the rationale of this Court's decision in *Spivack* to be more compelling.

The latest two Common Pleas courts that have confronted this question have allowed the implied warranty of habitability to extend to second or subsequent purchasers, and have done so for public policy reasons. In not requiring privity of contract, these two trial court decisions observed that the implied warranty of habitability is not created by any written agreement.

> The implied warranty [of habitability] is a creature of public policy. The warranty was created because a builder who exercises reasonable care should be capable of constructing a house that meets the warranty standards, because the price that the buyer is willing to pay is based on the assumption that the newly constructed house meets contemporary community standards for function and habitability, and because the contractor is the only party that is in a position to know whether the house has been built in accordance with these standards. Even a knowledgeable buyer does not have access to the underlying structural work. Furthermore, defects attributable to negligent or deliberate failures to comply with building codes frequently do not manifest themselves until many years after the house was constructed.

*Kapetanovich, supra* at 318–319; *see also Moyer, supra* at 500–501.

While we are persuaded by the policy arguments of the *Kapetanovich* and *Moyer* decisions, we also draw upon the policy considerations contemplated by our Supreme Court in *Elderkin*, and by this Court in *Spivack*. Our Supreme Court observed that a purchaser of a new home "justifiably relies on the skill of the [builder] that the house will be a suitable living unit." *Elderkin, supra* at 776; *see also Spivack, supra* at 405. By the same token, a second or subsequent purchaser also implicitly relies on the home builder's skill that the home will be a habitable one. In addition, our Supreme Court noted that a builder "hold[s] himself out as having the necessary expertise with which to produce an adequate dwelling...." *Elderkin, supra* at 776. Therefore, the builder is certifying that the home as a structure will be habitable and free from latent construction defects affecting habitability; regardless of how many times title changes hands. A second or subsequent purchaser is entitled to the same assurances as the original purchaser that the home the builder has constructed is habitable for human living. By its very nature the implied warranty of habitability shifts the risk of latent defects from the initial homeowner to the builder because the builder is the party with the "necessary expertise" that the initial purchaser does not possess. *Id.* at 776–777; *see also Spivack, supra* at 405. When a home is sold from the initial purchaser to a second purchaser, neither party to that sale possesses the expertise that the builder does. *See Kapetanovich, supra* at 319 (stating, "the subsequent purchaser is in no better position than the initial purchaser to discover hidden structural defects[ ]").

In addition, by its very nature, the implied warranty of habitability targets "[d]efects which would not be apparent to the ordinary purchaser as a result of a

reasonable inspection." *Tyus, supra* at 433. The Conways aptly point out that many structural defects in homes "[do not] manifest for many years." Conways' Brief at 6 (citation omitted). However, the defect nevertheless will have existed since the completion of the home by the builder. In our view, it would be patently inequitable to re-shift the risk of latent defects back to a second or subsequent homeowner. *See Kapetanovich, supra* at 319 (stating, "[if] the case law allows the contractor to avoid its responsibilities under the [implied] warranty simply because the original purchaser happens to transfer the property within the life of the warranty, the law creates a windfall for the contractor and its insurance carrier[ ]").

If we were to accept Builder's position, it would present problematic consequences. For example, if a given structural defect does not materialize until a home is five-years old, and the original purchaser is still occupying the home, he or she may recover under the implied warranty of habitability. However, if the same defect materializes when a home is five-years-old, but the original purchaser sold the home after the third year, the current homeowner cannot recover. We conclude that allowing such divided recovery based on whether the home is sold, a factor that

is immaterial to whether a "[d]efect ... [would be] apparent to the ordinary purchaser as a result of a reasonable inspection[,]" would be inherently unfair. *See Tyus, supra* at 433; *see also Redarowicz, supra* at 330 (stating, "[t]he compelling public policies underlying the implied warranty of habitability should not be frustrated because of the short intervening ownership of the first purchaser ..."). Therefore, the risk of latent defects affecting habitability in the home that do not materialize for years after construction properly rests with the party who built the home, irrespective of whether the homeowner is the original buyer.[4] We accordingly conclude that the Conways' policy arguments are persuasive and hold that the implied warranty of habitability extends to a second or subsequent purchaser of a home.

■■■ We note that our decision will not lead to unlimited liability against homebuilders. It is still the plaintiff's burden to show that the alleged defect is latent, attributable to the builder's design or construction, and affects habitability. *See Moyer, supra* at 500–501. Moreover, all homeowners must still bring their claims within the 12–year period set out by the statute of repose.[5] *See* 42 Pa.C.S.A.

---

4. We also observe that several of our sister states have allowed a second or subsequent purchaser to proceed with an implied warranty of habitability claim. *See Richards v. Powercraft Homes, Inc.*, 139 Ariz. 242, 678 P.2d 427 (1984); *Blagg v. Fred Hunt Co.*, 272 Ark. 185, 612 S.W.2d 321 (1981); *Tusch Enters. v. Coffin*, 113 Idaho 37, 740 P.2d 1022 (1987); *Redarowicz v. Ohlendorf*, 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982); *Barnes v. Mac Brown & Co.*, 264 Ind. 227, 342 N.E.2d 619 (1976); *Speight v. Walters Dev. Co., Ltd.*, 744 N.W.2d 108 (Iowa 2008); *Degeneres v. Burgess*, 486 So.2d 769 (La.Ct.App. 1986); *Keyes v. Guy Bailey Homes, Inc.*, 439 So.2d 670 (Miss.1983); *Lempke v. Dagenais*, 130 N.H. 782, 547 A.2d 290 (1988); *Andreychak v. Lent*, 257 N.J.Super. 69, 607 A.2d 1346

(App.Div.1992); *Elden v. Simmons*, 631 P.2d 739 (Okla.1981); *Nichols v. R.R. Beaufort & Assocs., Inc.*, 727 A.2d 174 (R.I.1999); *Terlinde v. Neely*, 275 S.C. 395, 271 S.E.2d 768 (1980); *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988); *Moxley v. Laramie Builders, Inc.*, 600 P.2d 733 (Wyo.1979). Builder also points out that several states have extended the implied warranty of habitability to subsequent purchasers by statute. Builder's Brief at 13, n. 5, *citing* Minn.Stat. Ann. § 327A.01; N.Y. Gen. Bus. Law § 777; Va.Code Ann. § 55–70.1.

5. A statute of repose, as opposed to a statute of limitations, is "[a] statute barring any suit that is brought after a specified time since the defendant acted ... even if this period ends

§ 5536(a) (stating, "a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement[ ]").

To summarize, we hold that the implied warranty of habitability does apply to a second or subsequent purchaser of a home.[6] We therefore conclude the trial court legally erred when it sustained Builder's preliminary objections and dismissed the Conways' complaint with prejudice. Accordingly, the order dismissing the Conways' complaint is reversed, and the case is remanded for further proceedings, consistent with this opinion.

Order reversed. Case remanded. Jurisdiction relinquished.

before the plaintiff has suffered a resulting injury." Black's Law Dictionary 1451 (8th ed.2004).

6. As the trial court did not address the Conways' second issue, we express no opinion on it here.