# IN THE SUPREME COURT OF IOWA

No. 103 / 05–1996

Filed February 1, 2008

**ROBERT M. SPEIGHT** and **BEVERLY E. SPEIGHT,**

Appellants,

vs.

**WALTERS DEVELOPMENT COMPANY, LTD.,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Robert A. Hutchison, Judge.

Third-party purchasers of home appeal from summary judgment for builder in suit for breach of implied warranty of workmanlike construction. **DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED; CASE REMANDED.**

Harley C. Erbe of Erbe Law Firm, West Des Moines, for appellants.

Brian P. Rickert and Michael J. Green of Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, P.L.C., Des Moines, for appellee.

**LARSON, Justice.**

The plaintiffs, Robert and Beverly Speight, appeal from a summary judgment entered against them in their suit for breach of implied warranty of workmanlike construction against the builder of their home. The court of appeals affirmed. Both the district court and the court of appeals expressly declined to recognize an implied-warranty claim in favor of third-party purchasers, deferring for such a decision to this court. We now extend our common law of implied warranty to cover such parties and therefore vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for further proceedings.

### I. Facts and Prior Proceedings.

The Speights are the present owners of a home in Clive, Iowa, which was custom-built in 1995 by the defendant, Walters Development Company, Ltd. It was built for use by the original buyers, named Roche. The Roches sold the home to people named Rogers, who in turn sold it to the Speights on August 1, 2000. Sometime after purchasing the home, the Speights noticed water damage and mold. A building inspector determined that the damage was the result of a defectively constructed roof and defective rain gutters. Nothing in the record indicates that any of the owners between the original builder and the Speights had actual or imputed knowledge of these defects.

The Speights filed suit against Walters on May 23, 2005, alleging a breach of implied warranty of workmanlike construction and general negligence in construction of the home. Both the Speights and Walters moved for summary judgment, raising the issue of whether the Speights, as remote purchasers, could pursue a claim for breach of an implied warranty of workmanlike construction. Walters also raised the issue of

whether the plaintiffs' claim for breach of implied warranty was barred by Iowa Code section 614.1(4) (2005), the applicable statute of limitations. The district court concluded that, under the present state of the law, the Speights could not maintain an implied-warranty claim, and in any event, such claim would be barred by the statute of limitations. The district court also concluded that the Speights could not bring a general negligence claim because they did not assert an accompanying claim for personal injury—a ruling the plaintiffs do not challenge on appeal.

## II. The Implied-Warranty Claim.

The implied warranty of workmanlike construction is a judicially created doctrine implemented to protect an innocent home buyer by holding the experienced builder accountable for the quality of construction. *See* 17 Richard A. Lord, *Williston on Contracts* § 50:30 (4th ed. 2007) [hereinafter Lord]. Home buyers are generally in an inferior position when purchasing a home from a builder-vendor because of the buyer's lack of expertise in quality home construction and the fact that many defects in construction are latent. These defects, even if the home were inspected by a professional, would not be discoverable. *See* Sean M. O'Brien, Note, *Caveat Venditor: A Case for Granting Subsequent Purchasers a Cause of Action Against Builder-Vendors for Latent Defects in the Home*, 20 J. Corp. L. 525, 529 (Spring 1995).

The implied warranty of workmanlike construction addresses the inequities between the buyer and the builder-vendor by requiring that a building be constructed "in a reasonably good and workmanlike manner and . . . be reasonably fit for the intended purpose." *Kirk v. Ridgway*, 373 N.W.2d 491, 492 (Iowa 1985). In *Kirk* this court applied the doctrine of implied warranty of workmanlike construction to the sale of a home by the builder to the first owner. 373 N.W.2d at 496. In doing so, we noted

that interest in consumer protection had increased, and the complexity of homes had increased, making it difficult for a buyer to discover defects in the construction. *Id.* at 493–94. In *Kirk* we rejected the application of the doctrine of *caveat emptor* under which "it has been observed, courts considered purchasing as a game of chance." *Id.* at 493 (citing Roberts, *The Case of the Unwary Home Buyer: The Housing Merchant Did It*, 52 Cornell L.Q. 835, 836 (1967)). We noted that home buyers are ill-equipped to discover defects in homes, which are increasingly complex, and therefore must rely on the skill and judgment of the vendor. *Id.* at 494.

In *Kirk* we held that, in order to sustain a claim that a builder-vendor has breached the implied warranty of workmanlike construction, the buyer must show:

> (1) [t]hat the house was constructed to be occupied by the [buyer] as a home;
>
> (2) that the house was purchased from a builder-vendor, who had constructed it for the purpose of sale;
>
> (3) that when sold, the house was not reasonably fit for its intended purpose or had not been constructed in a good and workmanlike manner;
>
> (4) that, at the time of purchase, the buyer was unaware of the defect and had no reasonable means of discovering it; and
>
> (5) that by reason of the defective condition the buyer suffered damages.

*Id.* at 496; *see also Flom v. Stahly*, 569 N.W.2d 135, 142 (Iowa 1997).

In *Kirk* we defined a "builder" as

> "a general building contractor who controls and directs the construction of a building, has ultimate responsibility for completion of the whole contract and for putting the structure into permanent form thus, necessarily excluding merchants, material men, artisans, laborers, subcontractors, and employees of a general contractor."

373 N.W.2d at 496 (quoting *Jeanguneat v. Jackie Hames Constr. Co.*, 576 P.2d 761, 762 (Okla. 1978)).

The plaintiffs ask this court to take the cause of action recognized in *Kirk* one step further by applying it to the case of a subsequent purchaser. Jurisdictions outside of Iowa are split on this issue.

Many jurisdictions do not permit subsequent purchasers to recover for a breach of the implied warranty of workmanlike construction.[1] This holding stems from the lack of a contractual relationship between the subsequent purchaser and the builder-vendor. Michael A. DiSabatino, J.D., Annotation, *Liability of Builder of Residence for Latent Defects Therein as Running to Subsequent Purchasers from Original Vendee*, 10 A.L.R.4th 385, 388 (1981) [hereinafter DiSabatino]. The implied warranty of workmanlike construction is contractual in nature, and because privity is traditionally required in order to maintain a contract action, some courts have concluded that the lack of privity between the subsequent purchaser and the builder-vendor prevents the subsequent purchaser's implied-warranty claim. O'Brien, 20 J. Corp. L. at 537; *see also* Mary Dee Pridgen, *Consumer Protection and the Law* § 18:19 (2006) [hereinafter Pridgen] (discussing the holding in *Crowder v. Vandendeale*,

---

[1]*See, e.g.*, *Lee v. Clark & Assocs. Real Estate, Inc.*, 512 So. 2d 42 (Ala. 1987); *Aas v. Super. Ct.*, 12 P.3d 1125 (Cal. 2000) (superseded by statute on other grounds); *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041 (Colo. 1983); *Coburn v. Lenox Homes, Inc.*, 378 A.2d 599 (Conn. 1977); *Council of Unit Owners of Sea Colony East, Phases III, IV, VI & VII v. Carl M. Freeman Assocs., Inc.*, 1989 WL 48568 (Del. Super. 1989); *Drexel Props., Inc. v. Bay Colony Club Condo., Inc.*, 406 So. 2d 515 (Fla. Dist. Ct. App. 1981), *disapproved of on other grounds by Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244 (Fla. 1993); *Dunant v. Wilmock, Inc.*, 335 S.E.2d 162 (Ga. Ct. App. 1985); *Miles v. Love*, 573 P.2d 622 (Kan. Ct. App. 1977); *Real Estate Mktg., Inc. v. Franz*, 885 S.W.2d 921 (Ky. 1994); *Tereault v. Palmer*, 413 N.W.2d 283 (Minn. Ct. App. 1987); *John H. Armbruster & Co. v. Hayden Co.—Builder Developer, Inc.*, 622 S.W.2d 704 (Mo. Ct. App. 1981); *Butler v. Caldwell & Cook, Inc.*, 505 N.Y.S.2d 288 (N.Y. App. Div. 1986); *Brown v. Fowler*, 279 N.W.2d 907 (S.D. 1979); *Briggs v. Riversound Ltd. P'ship*, 942 S.W.2d 529 (Tenn. Ct. App. 1996); *Schafir v. Harrigan*, 879 P.2d 1384 (Utah Ct. App. 1994); *Northridge Co. v. W.R. Grace & Co.*, 471 N.W.2d 179 (Wis. 1991).

564 S.W.2d 879, 881 (Mo. 1978)); 2 James Acret, *Construction Law Digests* § 14:12 (2007) [hereinafter Acret] ("The implied warranty of habitability arises out of a contract between the builder and the initial buyer. There is no hint in the case law that it arises out of the general duty to build a reasonably fit house, by reason of which the builder would be liable to remote purchasers, that is, the general public, having no privity with it." (discussing the holding in *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 449 N.E.2d 125 (Ill. 1983))). Further, because there is a lack of privity between the subsequent purchaser and the builder-vendor, there is no reliance by the subsequent purchaser on any representations made by the builder-vendor regarding the quality of construction. *See* Pridgen, § 18:19. Finally, some courts have concluded that the justifications for eliminating the privity requirement in products liability cases do not exist in the sale of real estate. *See* DiSabatino, 10 A.L.R.4th at 397–98 ("The court reasoned that a house which is not the product of a mass marketing scheme or which is not designed as a temporary dwelling differs from the usual item to which the principles of strict liability have generally been applied, in that it is not an item which generally changes owners or occupants frequently." (discussing *Coburn v. Lenox Homes, Inc.*, 378 A.2d 599 (Conn. 1977))).

Other jurisdictions do permit subsequent purchasers to recover for a breach of the implied warranty of workmanlike construction.[2] The

---

[2]*See, e.g., Richards v. Powercraft Homes, Inc.*, 678 P.2d 427 (Ariz. 1984); *Blagg v. Fred Hunt Co.*, 612 S.W.2d 321 (Ark. 1981); *Tusch Enters. v. Coffin*, 740 P.2d 1022 (Idaho 1987); *Redarowicz v. Ohlendorf*, 441 N.E.2d 324 (Ill. 1982); *Barnes v. Mac Brown & Co.*, 342 N.E.2d 619 (Ind. 1976); *Degeneres v. Burgess*, 486 So. 2d 769 (La. Ct. App. 1986); *Dunelawn Owners' Ass'n v. Gendreau*, 750 A.2d 591 (Me. 2000) (citing 33 M.R.S.A. § 1604–113(f)); *Keyes v. Guy Bailey Homes, Inc.*, 439 So. 2d 670 (Miss. 1983); *Moglia v. McNeil Co.*, 700 N.W.2d 608 (Neb. 2005); *Lempke v. Dagenais*, 547 A.2d 290 (N.H. 1988); *Hermes v. Staiano*, 437 A.2d 925 (N.J. 1981); *Gaito v. Auman*, 327 S.E.2d 870 (N.C. 1985); *Baddour v. Fox*, 2004 WL 1327925 (Ohio Ct. App. 2004); *Elden v. Simmons*, 631 P.2d 739 (Okla. 1981); *Nichols v. R.R. Beaufort & Assocs., Inc.*, 727 A.2d

purpose of the implied warranty of workmanlike construction is to ensure that innocent home buyers are protected from latent defects. This principle is " 'equally applicable to subsequent purchasers' " who are in no better position to discover those defects than the original purchaser. Acret, § 14:12 (discussing and quoting the holding in *Lempke v. Dagenais*, 547 A.2d 290 (N.H. 1988)); *see also* Pridgen, § 18:19 (" 'The purpose of a warranty is to protect innocent purchasers and hold builders accountable for their work. With that object in mind, any reasoning which would arbitrarily interpose a first buyer as an obstruction to someone equally as deserving of recovery is incomprehensible.' " (quoting *Moxley v. Laramie Builders, Inc.*, 600 P.2d 733, 736 (Wyo. 1979))). Thus, the public policy justifications for eliminating the doctrine of *caveat emptor* for original purchasers of new homes similarly support allowing subsequent purchasers to recover on a theory of a breach of the implied warranty of workmanlike construction. *See* O'Brien, 20 J. Corp. L. at 531–32 ("[B]y definition, latent defects are not discoverable by reasonable inspection. Thus, home buyers are left with the choice of relying on a builder-vendor's expertise, or not buying a home at all. As one court stated, '(t)o apply the rule of caveat emptor to an inexperienced buyer, and in favor of a builder(-vendor) who is daily engaged in the business of building and selling houses is manifestly a denial of justice.' " (Internal citations omitted.)). Further, the purpose of the implied warranty of workmanlike construction is to ensure the home " 'will be fit for habitation,' a matter that 'depends upon the quality of the

---

174 (R.I. 1999); *Terlinde v. Neely*, 271 S.E.2d 768 (S.C. 1980); *Gupta v. Ritter Homes, Inc.*, 646 S.W.2d 168 (Tex. 1983), *overruled in relevant part in Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644 (Tex. 1996); *Sewell v. Gregory*, 371 S.E.2d 82 (W. Va. 1988); *Moxley v. Laramie Builders, Inc.*, 600 P.2d 733 (Wyo. 1979).

dwelling delivered' not the status of the buyer." Pridgen, § 18:19 (quoting *Tusch Enters. v. Coffin*, 740 P.2d 1022 (Idaho 1987)).

The lack of privity between the subsequent purchaser and the builder-vendor is not an impediment, in these jurisdictions, to allowing a subsequent purchaser to recover on an implied-warranty claim. Though the implied warranty of workmanlike construction " 'has roots in the execution of the contract for sale,' " it exists independently of the contract by its very nature. O'Brien, 20 J. Corp. L. at 538 (citations omitted). Additionally, requiring privity to sue for a breach of an implied warranty has been disfavored in products liability cases in some jurisdictions. Many jurisdictions find similar justifications for extinguishing the privity requirement in the purchase of a home. *See* O'Brien, § 50:30 ("[T]he builder was in the same position as a manufacturer who sells an article which, if defective, will be imminently dangerous to persons who come in contact with it, 'and liability is not limited to those with whom the manufacturer contracts.' " (quoting *Leigh v. Wadsworth*, 361 P.2d 849 (Okla. 1961))). From a practical perspective, these jurisdictions note that many latent defects "are often not discoverable for some time after completion of the house. By the time the defects come to light, the original purchasers may have sold the home. For that reason, subsequent purchasers need protection for faulty construction." Pridgen, § 18:19. Additionally, the reality is that our society is increasingly mobile, and as a result, a home's ownership is likely to change hands a number of times. *See* O'Brien, 20 J. Corp. L. at 526 (noting that, at the time the note was written, "[n]early four million single-family used homes [were] sold in the United States every year"). A blanket rule prohibiting subsequent purchasers from recovering for a breach of the implied warranty of workmanlike construction would do

injustice to those who purchase a home from a previous buyer shortly after the home was constructed when the subsequent purchaser later discovers that the home was defectively constructed. *See id.* at 538. Finally, one author posits that the doctrine of assignment allows for the transfer to the subsequent purchaser of the original purchaser's right to sue for breach of the implied warranty of workmanlike construction. *Id.* at 538–40.

We believe that Iowa law should follow the modern trend allowing a subsequent purchaser to recover against a builder-vendor for a breach of the implied warranty of workmanlike construction. As in many jurisdictions, this court has eliminated the privity requirement in products liability cases raising a breach-of-implied-warranty claim. *See State Farm Mut. Auto. Ins. Co. v. Anderson-Weber, Inc.*, 110 N.W.2d 449, 456 (Iowa 1961). As the court discussed in *State Farm*, the privity requirement was eliminated in other jurisdictions to " 'ameliorate the harsh doctrine of *caveat emptor*,' " and because " 'the [implied warranty] obligations on the part of the seller were imposed by operation of law, and did not depend for their existence upon express agreement of the parties,' " privity was not necessary. *Id.* at 454 (quoting *Henningsen v. Bloomfield Motors, Inc.*, 161 A.2d 69 (N.J. 1960)). The same is true in a case such as the present one in which a home buyer raises an implied-warranty claim. Further, the implied warranty of workmanlike construction is a judicial creation and does not, in itself, arise from the language of any contract between the builder-vendor and the original purchaser. Thus, it is not extinguished upon the original purchaser's sale of the home to a subsequent purchaser. The builder-vendor warrants that the home was constructed in a workmanlike manner, not that it is fit for any particular purpose the original owner intended. As

such, there is no contractual justification for limiting recovery to the original purchaser.

Additionally, the public policy justifications supporting our decision to recede from the doctrine of *caveat emptor* in the sale of new homes by builder-vendors equally apply to the sale of used homes to subsequent purchasers. As discussed above, latent defects are, by definition, undiscoverable by reasonable inspection. Thus, the subsequent purchaser is in no better position to discover those defects than the original purchaser. It is inequitable to allow an original purchaser to recover while, simultaneously, prohibiting a subsequent purchaser from recovering for latent defects in homes that are the same age.

Walters contends that allowing the recovery the Speights seek would lead to increased costs for builders, increased claims, and increased home prices. However, builder-vendors are currently required to build a home in a good and workmanlike manner. The implied warranty of workmanlike construction reasonably puts the risk of shoddy construction on the builder-vendor. The builder-vendor's risk is not increased by allowing subsequent purchasers to recover for the same latent defects for which an original purchaser could recover. As discussed more fully below, the statute of limitations and statute of repose are the same for original purchasers and subsequent purchasers, thus eliminating any increased time period within which a builder-vendor is subject to suit.

Walters argues that allowing subsequent purchasers to recover for a breach of the implied warranty of workmanlike construction would subject builder-vendors to unlimited liability; however, we are not persuaded. Iowa Code section 614.1(11) provides a safety net—a statute

of repose for potential plaintiffs seeking to recover for breach of an implied warranty on an improvement to real property. A statute of repose works to " 'terminate[] any right of action after a specified time has elapsed, regardless of whether or not there has as yet been an injury.' " *Bob McKiness Excavating & Grading, Inc. v. Morton*, 507 N.W.2d 405, 408 (Iowa 1993) (quoting *Hanson v. Williams County*, 389 N.W.2d 319, 321 (N.D. 1986)). Section 614.1(11) applies to an action for breach of the implied warranty of workmanlike construction in the purchase of a building. *See id.* at 409. That section provides

> an action arising out of the unsafe or defective condition of an improvement to real property based on tort and implied warranty . . . and founded on injury to property, real or personal, or injury to the person or wrongful death, shall not be brought more than fifteen years after the date on which occurred the act or omission of the defendant alleged in the action to have been the cause of the injury or death.

Iowa Code § 614.1(11). Pursuant to section 614.1(11), the period of repose begins to run on the date of the act or omission causing the injury. In cases involving the construction of a building, such as this home, that period begins upon completion of the construction of the building. *See Bob McKiness Excavating & Grading, Inc.*, 507 N.W.2d at 409. As a result, builder-vendors are not liable on an implied-warranty claim after the statute of repose has run, regardless of who owns the home. In summary, we adopt what we view to be the emerging and better view that subsequent purchasers may recover for breach of implied warranty of workmanlike construction against a builder-vendor as recognized in *Kirk* for first-party purchasers. Subsequent purchasers, of course, may not be afforded greater rights of recovery than the original purchasers.

### III.  The Statute of Limitations.

The defendant contends that, even if we recognize a cause of action under these circumstances, it would be barred by the statute of limitations under Iowa Code section 614.1(4).  The district court and the court of appeals agreed and concluded that this suit was time-barred.  We disagree.

Under Iowa Code section 614.1,

> [a]ctions may be brought within the times herein limited, respectively, *after their causes accrue*, and not afterwards, except when otherwise specially declared:
>
> . . . .
>
> 4. *Unwritten contracts—injuries to property—fraud— other actions.*  Those founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect, within five years . . . .

(Emphasis added.)

The question in this case is when the plaintiffs' cause of action accrued.  The defendant argues, and the district court held, that the cause of action accrued in 1995, when the house was sold by the defendant to the original purchasers.  The Speights filed this suit in 2005, which was well beyond the five-year statute of limitations, according to the defendant.  The defendant's time-bar argument relies on Iowa Code section 554.2725(2), under which all actions for breach of implied warranty accrue at the time of delivery, not at the time the damage is discovered.  The Speights counter that their claim is not based on the sale of goods and, therefore, section 554.2725(2), which is part of the Uniform Commercial Code (UCC), does not apply.  We agree with the Speights' position.  Article 2 of the UCC applies only to transactions involving the sale of goods.  Iowa Code § 554.2102.  Goods are "all things

. . . which are movable at the time of identification to the contract for sale." *Id.* § 554.2105(1). Clearly, the construction of a home is not a transaction for the sale of goods to which the UCC applies. Therefore, the limitation provided in section 554.2725(2) does not apply to cases such as the present one. We made that clear in *Brown v. Ellison*, 304 N.W.2d 197 (Iowa 1981), in which we distinguished cases involving breach of implied warranties of workmanship from those under the UCC.

> We hold that the discovery rule is applicable to cases arising from express and implied warranties. This holding, of course, does not apply to situations in which statutes expressly provide that a cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *See, e.g.,* Iowa Uniform Commercial Code, § 554.2725 . . . . The trial court was, therefore, correct in applying the discovery rule.

*Brown*, 304 N.W.2d at 201.

We reject the defendant's argument that the plaintiffs' cause of action accrued in 1995 when the house was originally sold. Under the discovery rule, a cause of action does not accrue until the injured party has actual or imputed knowledge of the facts that would support a cause of action. We have said:

> "Knowledge is imputed to a claimant when he gains information sufficient to alert a reasonable person of the need to investigate. As of that date he is on inquiry notice of all facts that would have been disclosed by a reasonably diligent investigation."

*Perkins v. HEA of Iowa, Inc.,* 651 N.W.2d 40, 44 (Iowa 2002) (quoting *Ranney v. Parawax Co.,* 582 N.W.2d 152, 155 (Iowa 1998)). The Speights' suit was filed on May 23, 2005, which was within five years of their purchase of the home. It cannot, therefore, be credibly argued that the plaintiffs had knowledge—either actual or imputed—of the defect

more than five years before their suit was filed because they did not even own the property at that time.

We adopt and apply the doctrine of implied warranty of workmanlike construction to subsequent, as well as initial, purchasers. We conclude as a matter of law that the plaintiffs could not have gained actual or imputed knowledge of the defect in their home more than five years prior to commencing this action, and their suit is therefore not time-barred under Iowa Code section 614.1(4). We vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED; CASE REMANDED.**

All justices concur except Appel, J., who takes no part.