# IN THE COURT OF APPEALS OF IOWA

No. 4-065 / 13-1285
Filed April 16, 2014

ROSAUER CORPORATION,
    Plaintiff-Appellant,

vs.

SAPP DEVELOPMENT, L.L.C.,
TODD SAPP, WHISPERING CREEK,
L.L.C., and W.C. DEVELOPMENT, INC.,
a/k/a MORNINGSIDE INVESTORS, L.C.,
    Defendants-Appellees.

_____

Appeal from the Iowa District Court for Woodbury County, Duane E.

Hoffmeyer, Judge.


A land purchaser appeals the grant of summary judgment in favor of a

residential developer for an alleged breach of an implied warranty of good

workmanship or reasonable fitness for a particular purpose with respect to a

residential lot. **AFFIRMED.**


Paul D. Lundberg of Lundberg Law Firm, P.L.C., Sioux City, for appellant.

Patrick L. Sealey and John C. Markham of Heidman Law Firm, L.L.P.,

Sioux City, for appellees.


Considered by Tabor, P.J., McDonald, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**TABOR, P.J.**

Land purchaser Rosauer Corporation challenges the district court's grant of summary judgment in favor of Todd Sapp, president of W.C. Development, L.L.C. The district court concluded the implied warranties of workmanlike construction and reasonable fitness for an intended purpose did not apply to Sapp's conduct in selling a residential lot.

On appeal, Rosauer seeks to extend the holding in *Speight v. Walters Dev. Co.*, 744 N.W.2d 108, 114–15 (Iowa 2008) to subsequent purchasers of building lots. We decline to extend *Speight* under these circumstances, deferring such a decision to our supreme court. Accordingly, we affirm the grant of summary judgment.

## I. Background Facts and Proceedings

Lot 13 of Royal Highlands, Third Addition, was farmland before Todd Sapp and his company, W.C. Development, L.L.C., created the residential subdivision on the southeast side of Sioux City. Sapp contracted with Burkhardt Earth Moving to perform excavation work, including scraping the crown off the lot which sat atop a hill and filling in the valley with "some dirt." Sapp asserted his company hired Certified Testing Services (CTS) to ensure the fill and soil compaction in the development met industry standards.

In April 2003, Sapp sold Lot 13 to realtor Kenneth Beaulieu. Beaulieu marketed the hilltop lot for its views of the backside of Whispering Creek Golf Course. In July 2007, Rosauer Corporation purchased Lot 13 from Beaulieu for $50,000. The building lots were subject to restrictive covenants. Rosauer

planned to build two townhomes on the lot. Rosauer had heard "rumors through the grapevine that there were houses that were settling [in the Whispering Creek development], and some dirt problems on certain areas." But Rosauer did not ask Beaulieu about those rumors before purchasing Lot 13.

After the purchase, Rosauer hired CTS to perform boring and soil testing on Lot 13. The testing was required by Rosauer's lender. The September 2007 test results showed the fill was not compacted properly. The main concern of the soil engineers was "undocumented fill material in the top 15 feet to 18.5 feet of the borings." The report stated: "CTS does not recommend that the structure be placed on the existing fill material in its present condition."

In addition to being the developer, Sapp served on the architectural design review committee for the Royal Highlands, Third Addition. As a lot owner, Rosauer was required to submit his townhome plans to that committee and receive approval before starting to build. By September 2007, Rosauer had not yet received approval from the design review committee.

Upon receiving the CTS report, Rosauer called Sapp to discuss the fact Rosauer would have to "do an overdig" before starting construction of the townhomes. Rosauer recalled a second conversation in which Sapp said:

> [H]e had this problem on several other lots up there. He said usually what happened was the builders went ahead . . . completed the dirt work as needed, and then upon completion, any of that extra work that would have been above and beyond normal, the development had taken care of the extra costs of doing so.

Rosauer alleges he spent $76,858.84 to remove and replace the improperly compacted soil on Lot 13 in the fall of 2007. Rosauer acknowledges

approximately $69,995 of the work was completed by his own landscaping company. Rosauer eventually built two townhomes on Lot 13. Rosauer also testified that in subsequent property deals he has asked two different realtors if he could do soil testing before purchasing a residential lot, and he was told "no": "they both gave me the same reasoning, that they couldn't have the liability of someone testing before it was owned."

On June 11, 2012, Rosauer filed a lawsuit naming Sapp and his limited liability corporations, as defendants.[1] The suit alleged:

> After purchasing Lot 13 in Royal Highlands Third Addition, plaintiff learned, through soil testing, that the lot was unsuitable for residential construction without undergoing substantial over excavation and compaction to address improperly compacted fill material placed on the land by one or more of the defendants.

Rosauer's suit advanced two legal theories: negligence and breach of implied warranties. Sapp filed an answer on July 20, 2012.

On March 21, 2013, Sapp moved for summary judgment, alleging first, Rosauer's economic losses were not recoverable in tort, and second, "[t]he Iowa Supreme Court had not recognized a claim for implied warranties for the sale of unimproved land against a third-party lacking privity of contract." Rosauer resisted the motion for summary judgment, conceding he could not pursue a negligence action, but alleging genuine issues of material fact precluded summary judgment on his implied warranty claims. The district court granted

---

[1] Rosauer's original petition named Todd Sapp individually, as well as Sapp Development, L.L.C., and Whispering Creek, L.L.C. Rosauer filed an amended petition on September 19, 2012, adding "W.C. Development, Inc. a/k/a Morningside Investors, L.C." as defendants. On November 26, 2012, Rosauer filed a dismissal without prejudice of Sapp Development, L.L.C. and Whispering Creek, L.L.C. In this opinion, we will refer to the defendants collectively as Sapp.

summary judgment for Sapp, reasoning an implied warranty did not attach to Sapp's actions because "no physical structure was actually built on the land." The court concluded: "Without a dwelling, the doctrine of *caveat emptor* extinguishes Rosauer's claims of negligent workmanlike construction." Rosauer challenges the grant of summary judgment on appeal.

## II.    Scope and Standard of Review

We review a district court's grant of summary judgment for correction of legal error. *Mueller v. Wellmark, Inc.,* 818 N.W.2d 244, 253 (Iowa 2012). The legal question concerning the existence of an implied warranty may be properly resolved by summary judgment. *See Knapp v. Simmons*, 345 N.W.2d 118, 121 (Iowa 1984). Summary judgment is appropriate if the record reveals no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See Emp'rs Mut. Cas. Co. v. Van Haaften*, 815 N.W.2d 17, 22 (Iowa 2012). We view the record in the light most favorable to the nonmoving party, here Rosauer Corporation. *See Minor v. State*, 819 N.W.2d 383, 393 (Iowa 2012*)*.

## III.    Analysis

Rosauer acknowledges Iowa has yet to recognize an implied warranty for building lots, even for property like Lot 13 that has been excavated and backfilled. Rosauer argued in the district court: "The Iowa Supreme Court has never rejected a claim for breach of implied warranty on the sale of a residential building lot. The court has simply not addressed the issue."

In granting Sapp's motion for summary judgment, the district court predicted "if the question here to be decided were presented to the Supreme

Court of Iowa, the rule of *caveat emptor*[2] in the sale of land would be recognized and an implied warranty of workmanlike construction would not be available to a purchaser of a land parcel with no dwelling on it."[3] The district court decided the analysis in *Kirk v. Ridgway*, 373 N.W.2d 491, 496 (Iowa 1985) and *Speight*, 744 N.W.2d at 114, only applied to home construction.

Sapp advances two different arguments in support of the district court's ruling: first, agreeing there is no implied warranty under Iowa law for land in the absence of a constructed building and second, asserting the extension of the implied warranty to subsequent home purchasers in *Speight* does not apply to a commercial investor-builder like Rosauer.

---

[2] This phrase is Latin for "let the buyer beware" and describes a legal doctrine "holding that purchasers buy at their own risk." *See* Black's Law Dictionary 252 (9th ed. 2009) (explaining modern cases have "greatly limited the importance of this doctrine"). Iowa case law trends toward implied warranties. *See, e.g.*, *Speight*, 744 N.W.2d at 114 (allowing subsequent purchaser to recover against builder-vendor for breach of implied warranty of workmanlike construction); *Kirk*, 373 N.W.2d at 496 (applying doctrine of implied warranty of workmanlike construction to sale of home by builder-vendor to first owner); *Semler v. Knowling*, 325 N.W.2d 395, 398 (Iowa 1982) (finding implied warranty of fitness for particular purpose applied to installation of sewer); *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104, 110 (Iowa 1981) (acknowledging implied warranty that insurance policy later delivered would be reasonably fit for its intended purpose); *Mease v. Fox*, 200 N.W.2d 791, 796 (Iowa 1972) (recognizing implied warranty of habitability as available defense to tenants with residential lease); *Drager v. Carlson Hybrid Corn Co.*, 56 N.W.2d 18 (Iowa 1952) (allowing defense of implied warranty on personalty, specifically seed corn); *Boddy v. Henry*, 101 N.W. 447, 452 (Iowa 1904) (finding maxim caveat emptor did not bar relief to land purchaser claiming false representations as to number of acres); *Arthur v. Brick*, 565 N.W.2d 623, 625 (Iowa Ct. App. 1997) (describing trend as "dislodging antiquated concept of caveat emptor in most business transactions").

[3] The district court relied on a series of Alabama cases in deciding the Iowa Supreme Court would not recognize an implied warranty to land with no dwelling. *See, e.g.*, *Clay Kilgore Const., Inc. v. Buchalter/Grant L.L.C.*, 949 So.2d 893 (Ala. 2006) (defining "unimproved" property as land with no dwelling and applying rule of caveat emptor to such property); *DeAravjo v. Walker*, 589 So.2d 1292 (Ala. 1991) (same); *Morris v. Strickling*, 579 So.2d 609 (Ala. 1991) (same).

As to Sapp's first argument for affirming the grant of summary judgment, we take no position on the question whether the lack of a dwelling on a residential lot would require reliance on the rule of caveat emptor. We note other state appellate courts have recognized implied warranties on the sale of land by a developer. *See Rusch v. Lincoln-Devore Testing Laboratory, Inc.*, 698 P.2d 832, 835 (Colo. App. 1984) (holding where "a commercial developer improves and sells land for the express purpose of residential construction, an implied representation to a purchaser arises that the property is suitable for the residential purpose for which it is sold"); *Overton v. Kingsbrooke Dev., Inc.*, 788 N.E.2d 1212, 1218 (Ill. App. Ct. 2003) (holding buyer has a cause of action for a breach of an implied warranty of habitability against a developer/seller for latent defects in improved land); *Jordan v. Talaga*, 532 N.E.2d 1174, 1185–86 (Ind. Ct. App. 1989) (rejecting application of the rule of caveat emptor to sale of graded lots developed for homebuilding); *Hinson v. Jefferson*, 215 S.E.2d 102, 111 (N.C. 1975) (holding developer breached an implied warranty of habitability arising out of restrictive covenants because the land was valueless for the only purpose allowed—homebuilding). Moreover, Iowa cases do not rule out the possibility that subsurface contract work, rather than above-ground construction, could give rise to an implied warranty. *See, e.g., Midwest Dredging Co. v. McAninch Corp.*, 424 N.W.2d 216, 222 (Iowa 1988) (holding acts of state department of transportation in providing test boring results to highway construction subcontractor and requiring material in question be hydraulically dredged and

piped to construction site gave rise to implied warranty); *Semler*, 325 N.W.2d at 398 (recognizing availability of implied warranty relief for digging sewer).

But even if we believed a contract for excavation work could spawn an implied warranty that the developed lot was fit for a particular purpose, the circumstances here do not support extending such an implied warranty to Rosauer under existing Iowa law.

In *Kirk*, our supreme court allowed purchasers of a new home who discovered latent defects to recover from a builder-vendor under the implied warranty of workmanlike construction. 373 N.W.2d at 494. In *Speight*, the supreme court extended the implied warranty of workmanlike construction to subsequent purchasers. 744 N.W.2d at 115. *Speight* explained an implied warranty was a judicially-created doctrine having roots in the execution of a contract, but also "exists independently of the contract by its very nature." *Id.* at 110, 113. The court recognized the warranty did not arise from contractual language binding a builder-vendor and the original purchaser. *Id.* at 114. On that basis, it expanded the implied warranty of workmanlike construction to allow subsequent purchasers who were not in contractual privity to recover from the builder-vendor. *Id.*

Recognizing the limitations in the existing case law, Rosauer asked the supreme court to retain this case to extend the principles in *Speight* to subsequent purchasers of residential lots. Nevertheless, the supreme court transferred the appeal to our court.

On several occasions, our court has declined to extend the implied warranty of workmanlike construction to parties not previously recognized by the supreme court as warrantors or warrantees of that home-building doctrine. *See, e.g., Luana Sav. Bank v. Pro-Build Holdings, Inc.*, 2014 WL 69515, at *2 (Iowa Ct. App. 2014) (declining invitation to extend *Speight*'s implied warranty to consumer lender providing funds to build a multi-unit dwelling); *Village at White Birch Town Homeowners Ass'n v. Goodman Assocs., Inc.*, No. 11-1842, 2012 WL 5356045, at *4 (Iowa Ct. App. 2012) (opining that "to hold a subcontractor responsible under the implied warranty of workmanlike construction would overstep our current case law"), aff'd, 2014 WL 1351058 (Iowa Apr. 4, 2014); *Speight v. Walters Dev. Co., Ltd.*, 2007 WL 465572, at *1 (Iowa Ct. App. 2007) ("We leave it to the legislature or our supreme court to extend the law in this area."), *vacated by Speight*, 744 N.W.2d at 110.

We opt to follow that same path here. To allow a remote purchaser and commercial investor like Rosauer to benefit from an implied warranty of workmanlike performance by the excavation company, which contracted with the developer, would outpace our existing precedents. As Sapp asserts, Rosauer is not the kind of naïve purchaser the implied warranty normally works to protect. As a commercial investor, Rosauer would have more skills than the average consumer to determine if the lot was suitable for building. *See Speight*, 744 N.W.2d at 111 (noting "home buyers are ill-equipped to discover defects in homes, which are increasingly complex, and therefore must rely on the skill and judgment of the vendor"). Moreover, it is unclear under existing law that

developer Sapp would have the same status as a builder-vendor under the *Kirk-Speight* regime. *See Kirk*, 373 N.W.2d at 496 (defining builder as a general contractor who "has ultimate responsibility for the completion of the whole contract and for putting the structure into permanent form"). In addition, the intervening purchase of Lot 13 by realtor Beaulieu could impede the flow of the implied warranty to Rosauer. *See Speight*, 744 N.W.2d at 114 (suggesting it is the doctrine of assignment that would allow transfer of the original purchaser's right to sue for breach of an implied warranty to the subsequent purchaser).

We decline to apply the doctrine of implied warranty under these circumstances, leaving any extension of the principles discussed in *Speight* to the discretion of our supreme court. Accordingly, we affirm the grant of summary judgment to Sapp.

**AFFIRMED.**