HECHT, Justice
(dissenting).
The majority rejects Luana Savings Bank’s request for implied warranty protection, concluding only a narrow category of those suffering economic loss resulting *903 from poor workmanship of residential structures built by a particular category of builders are worthy of legal protection under implied warranty law. But “[disparity in the law should be founded upon just reason and not the result of adherence to stale principles....” Lane v. Trenholm Bldg. Co., 267 S.C. 497, 229 S.E.2d 728, 730 (1976); see also Kennedy v. Columbia Lumber & Mfg. Co., 299 S.C. 336, 384 S.E.2d 730, 734-35 (1989) (suggesting it is “repugnant” to deny implied warranty relief due to “traditional and technical legal distinctions”). Because I find the majority’s reasons for refusing to extend the protection of implied warranty to Luana Savings Bank unconvincing, I respectfully dissent.
A primary principle of the majority opinion is that purchasers of single-family residences are worthy of protection because of their “innocence” or lack of sophistication in buying residential real estate. Although I concede banks are often populated by persons with greater knowledge about commercial transactions than ordinary consumers, I believe this distinction is wholly inadequate as a justification for denying banks a remedy based on implied warranty for shoddily constructed buildings intended for habitation.
The business of constructing modern residential structures is a complex business that requires expert knowledge in a plethora of areas. See Speight v. Walters Dev. Ca., 744 N.W.2d 108, 111 (Iowa 2008) (noting constructed homes “are increasingly complex”); Kirk v. Ridgway, 373 N.W.2d 491, 494 (Iowa 1985) (similar). Developers, builders, and contractors of such structures are sophisticated in the sense that they commonly have a “high degree of specialized knowledge and expertise with regard to residential construction.” Smith v. Frandsen, 94 P.3d 919, 925 (Utah 2004). Their work is complex and regulated by many governmental regulations and industry codes. Richards v. Powercraft Homes, Inc., 139 Ariz. 242, 678 P.2d 427, 430 (1984). Their sophistication derived from knowledge and experience equips them to detect latent defects in construction materials and workmanship. But arms-length mortgage lenders lack such knowledge and experience and, like ordinary consumers purchasing residential property, are not equipped with the kind of sophistication that should count in deciding whether an implied warranty remedy should be available to them. Their knowledge of balance sheets, income statements, interest rates, and security instruments does not equip them with the same type of sophistication required for perceiving defects in construction materials or latent defects in the quality of workmanship.
In Speight, we extended the implied warranty of workmanlike construction owed by construction contractor-builders to subsequent purchasers of residential real estate. Speight, 744 N.W.2d at 114. Our rationale in that case for extending the warranty beyond the initial purchasers to subsequent purchasers was based on a simple proposition: The knowledge gap between the construction contractor-builders and initial residential property purchasers is coterminous with the knowledge and sophistication gap between contractor-builders and subsequent purchasers. Id. Accordingly, we rejected the notion of “buyer beware” for both initial and subsequent purchasers of residential real estate. See id. In my view, the knowledge and relevant sophistication gap noted in Speight is equally vast between contractors and mortgage lenders financing the construction of buildings intended for residential purposes. Just as we rejected for compelling reasons the notion of “buyer beware” in Speight, we should quickly dispatch the notion of “lender beware” under the circumstances presented here.
*904 Iowa 856 NORTH WESTERN REPORTER, 2d SERIES
■I also find unpersuasive the majority’s assertion that banks are less worthy of protection offered by the law of implied warranty than consumer-purchasers of residential property because banks possess financial resources enabling them to inspect construction projects, detect workmanship defects, and avoid losses of the type claimed by Luana Savings Bank. Conceding for the sake of discussion that banks often have greater financial resources at their disposal than consumer-purchasers of residential real estate, I find this distinction unsatisfying as a justification for denying Luana Savings Bank a remedy based on the law of implied warranty. The purpose of the implied warranty of good workmanship is to allocate, when possible, the economic losses resulting from poor construction workmanship to parties that provide poor workmanship causing damage to others. See Speight, 744 N.W.2d at 110 (noting the implied warranty operates by “holding the experienced builder accountable for the quality of construction”); see also Tusch Enters. v. Coffin, 113 Idaho 37, 740 P.2d 1022, 1032 (1987) (“[I]t is the builder or builder-developer whose conduct has created the latent defect, and it is the builder or builder-developer who is in the better position to guard against and remedy such defects.”). Those providing shoddy workmanship in residential construction should bear the resulting losses whether they are suffered by consumer-purchasers or commercial interests like Luana Savings Bank. The law of implied warranty should be available in either instance to allocate the cost of the shoddy workmanship to the person or entity responsible for it.
Unlike my colleagues in the majority, I believe Tusch Enterprises was correctly decided. In extending the implied warranty of workmanship to provide a remedy for investors who bought apartment buildings for investment purposes (rather than for their own residential use), the court recognized that the compelling reasons for protecting consumer-purchasers of residential property from losses resulting from defective workmanship also justified protection of purchasers who were motivated by a profit motive rather than a need for shelter. See Tusch, 740 P.2d at 1031.
My colleagues in the majority who reject Luana Savings Bank’s claim prefer the reasoning advanced by the dissent in Tusch. The dissent there viewed “investors in real estate” as standing “a far cry” from the ordinary buyer of a new house. Id. at 1038-39 (Shepard, C.J., dissenting). But the difference between investors and ordinary buyers perceived by the Tusch Enterprises dissent is specious for the reason (knowledge and relevant sophistication gap) I have explained above. I simply cannot accept that investors who suffer loss as a consequence of shoddily constructed buildings designed for residential use should be denied the same remedy as ordinary consumers who purchase the same type of property for their own occupancy.
Extending the implied warranty of workmanlike construction to protect commercial interests like Luana Savings Bank from shoddy construction workmanship imposes no new burden on contractor-builders. We addressed this issue head-on in Speight:
Walters contends that allowing the recovery the Speights seek would lead to increased costs for builders, increased claims, and increased home prices. However, builder-vendors are currently required to build a home in a good and workmanlike manner. The implied warranty of workmanlike construction reasonably puts the risk of shoddy construction on the builder-vendor. The builder-vendor’s risk is not increased by allowing subsequent purchasers to re *905 cover for the same latent defects for which an original purchaser could recover.
Speight, 744 N.W.2d at 114. As the Mississippi Supreme Court has observed:
The builder already owes a duty to construct the home in a workmanlike manner .... If we extend potential liability of the builder to subsequent purchasers, the builder still is burdened only with the duty to construct the home in a workmanlike manner, etc. In other words, no greater effort will be imposed on the builder to protect himself.
Keyes v. Guy Bailey Homes, Inc., 439 So.2d 670, 673 (Miss.1983). Extending the warranty to Luana Savings Bank here would not increase the contractor-builder’s burden. Moreover, a blameless builder would remain able to avoid liability for defects he did not cause by showing “that the defects are not attributable to him, that they are the result of age or ordinary wear and tear, or that previous owners have made substantial changes.” Richards, 678 P.2d at 430; see also Moxley v. Laramie Builders, Inc., 600 P.2d 733, 736 (Wyo.1979) (“The builder always has available the defense that the defects are not attributable to him.”).
My colleagues in the majority suggest the extension of implied warranty I propose will create unlimited liability for builders, stretching indefinitely into the future, and create “a morass of controversy and uncertainty through which no clear, reliáble road may be charted.” Hays v. Gilliam, 655 S.W.2d 158, 161 (Tenn.Ct.App.1983). This fear is vastly overblown. The road I propose to chart is clear and unobstructed. Construction contractors who build shoddy buildings intended for residential purposes will be accountable under the law of implied warranty. The road ahead under the principle I suggest here is also reliable. Iowa courts stand ready and able to apply the familiar doctrine of implied warranty in matters such as this.
I also find no reason to believe that, as the majority intimates, extending the implied warranty of workmanlike construction to protect commercial interests like Luana Savings Bank will create unlimited liability for builders stretching indefinitely into the future. The duration of builders’ exposure for breaches of implied warranty is already limited by the applicable statute of repose, as we noted in Speight:
Walters argues that allowing subsequent purchasers to recover for a breach of the implied warranty of workmanlike construction would subject builder-vendors to unlimited liability; however, we are not persuaded. Iowa Code section 614.1(11) provides a safety net — a statute of repose for potential plaintiffs seeking to recover for breach of an implied warranty on an improvement to real property....
... In cases involving the construction of a building, such as this home, that period begins upon completion of the construction of the building. As a result, builder-vendors are not liable on an implied-warranty claim after the statute of repose has run, regardless of who owns the home.
Speight, 744 N.W.2d at 115 (citations omitted). Regardless of how many subsequent purchasers take ownership of the house, and regardless of who those subsequent purchasers are (with some narrow exceptions), the extent of builders’ liability for unworkmanlike construction remains the same.
For these reasons, I would reverse the summary judgment and remand for trial.
APPEL, J., joins this dissent.