J.A05042/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PAUL AND LISA BUNCH, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellees | : | |
| | : | |
| v. | : | |
| | : | |
| THE CUTLER GROUP, INC. D/B/A/ | : | |
| THE DAVID CUTLER GROUP, | : | |
| | : | |
| Appellant | : | No. 1860 EDA 2013 |

Appeal from the Judgment June 24, 2013
In the Court of Common Pleas of Bucks County
Civil Division No(s).: 2008-00094

BEFORE: ALLEN, JENKINS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                **FILED AUGUST 29, 2014**

Appellant, The Cutler Group, Inc., doing business as The David Cutler Group, appeals from the judgment entered in favor of Appellees, Paul and Lisa Bunch, in this action for breach of an implied warranty of habitability. Appellant contends that because Appellees were subsequent, and not initial, purchasers of the home, the trial court should have granted judgment as a matter of law in its favor. For the reasons set forth below, including the recent Pennsylvania Supreme Court decision of *Conway v. Cutler Grp., Inc.*, 2014 WL 4064261 (Pa. August 18, 2014), we hold Appellant is due relief, vacate the judgment, reverse the order denying Appellant's post-trial

_____

[*] Former Justice specially assigned to the Superior Court.

motion, and remand with instructions to enter judgment notwithstanding the verdict in favor of Appellant.

We state the facts and procedural history as set forth by the trial court's opinion.

> [Appellees' home] was constructed by [Appellant] in early 2004. It had a brick front and hard-coat cement stucco on the remaining three sides. [Appellant] sold the home on May 24, 2004, to Otto and Patricia Furuta ("Furutas"), who were the first occupants. Approximately one year later, in July 2005, [Appellees] purchased the home from the Furutas for $715,000.
>
> Prior to the sale, [Appellees] hired a housing inspection company to uncover any potential problems. The inspection revealed four issues: a problem with the temperature gradient in the air conditioning unit; difficulty opening and closing a casement window; water on a sill plate in the basement; and exterior deterioration of the stucco surrounding the patio door. The Furutas had each of those items repaired prior to closing, and [Appellees] believed all problems were remediated.
>
> In 2006, [Appellees] noticed a brown water stain surrounding two adjacent windows over the fireplace, on the rear wall of the house. The rear wall patio door also leaked water around the seal, staining the carpeting and joists underneath it. [Appellees] assumed that the cause of the problem was a faulty patio door, which they replaced. The leaks persisted on the rear wall, streaking the paint from top to bottom. Water leaks were also discovered around windows in the second floor master bathroom, in the kitchen and in the garage.
>
> In 2007, [Appellees] hired an engineering firm to test the moisture content of the home's exterior. The engineers drilled 37 holes on all three stucco sides, testing the saturation of the wood substrate beneath the stucco. Of the 37 test sites, 15 revealed a substrate moisture level of 19 percent or greater, the threshold at which fungus and mold begin to form. Many of the sites showed 30

percent moisture or greater, the saturation point of wood. The engineers also discovered that the home lacked proper expansion joints, proper waterproof felt layers, and a proper drainage plane.

Also in 2007, [Appellees] sought assistance from [Appellant] in repairing the damage to the home. [Appellant] did not return [Appellees'] phone calls.

As a result of the engineering report, in September 2008[, Appellees] hired a contractor to replace the faulty stucco and rotted framing. The contractor discovered that some windows had been installed with reverse lapping, which funneled water against the wood structure rather than away from it. Over several years, these construction defects contributed to the structural damage, permitting the substrate to become saturated and decay. The contractor removed all stucco around the sides and rear of the house and replaced it with HardiePlank lap siding. The brick front remained intact. Every window was removed and the rotted framing replaced. First floor joist structures were remediated. [Appellees] testified that the total cost of needed repairs was approximately $235,000.28.

On January 4, 2008, [Appellees] filed the instant action against [Appellant, raising two claims for breach of the implied warranty of habitability]. On April 15, 2013, a three-day jury trial commenced. On April 17, 2013, a jury verdict was rendered in favor of [Appellees] for the sum of $151,325.00. On April 26, 2013, [Appellant] filed a motion for post-trial relief [for, *inter alia*, judgment notwithstanding the verdict]. On May 6, 2013, [Appellees] filed a petition for delay damages. On May 10, 2013, [Appellees] filed an amended petition for delay damages. On May 10, 2013, [Appellant] filed a response in opposition to delay damages. On June 3, 2013, [the trial] court issued an order granting delay damages of $21,232.13. On June 13, [the trial] court denied [Appellant's] motion for post-trial relief.

Trial Ct. Op., 8/15/13, at 2-4 (footnotes and capitalization omitted). The

court entered judgment against Appellant on June 24, 2013. Appellant filed

a timely notice of appeal on June 25, 2013, and timely filed a court ordered

Pa.R.A.P. 1925(b) statement.

Appellant raises the following issues:

> Whether the trial court should have entered judgment as a matter of law in favor of the builder and against the purchasers on their claim for breach of the implied warranty of habitability.
>
> Whether the trial court should have granted the builder's request for a new trial as to all issues.
>
> Whether the trial court abused its discretion or erred as a matter of law in granting the subsequent purchasers' untimely request for delay damages.

Appellant's Brief at 3.

For its first issue, Appellant contends that the trial court erred by not entering judgment notwithstanding the verdict in its favor. Specifically, Appellant asserts Appellees' claim for breach of the implied warranty of habitability fails because Appellees had prior knowledge of the alleged defect. Alternatively, Appellant suggests that Appellees introduced insufficient evidence of their damages. For the following reasons, we hold Appellant is due relief.

> In reviewing a motion for judgment [notwithstanding the verdict], the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Moreover, a judgment [notwithstanding the verdict] should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. Further, a judge's appraisement of evidence is not to be based on how he would have voted

had he been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations.

There are two bases upon which a judgment [notwithstanding the verdict] can be entered: one, the movant is entitled to judgment as a matter of law, . . . and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant[.] With the first a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

**Braun v. Wal-Mart Stores, Inc.**, 24 A.3d 875, 890-91 (Pa. Super. 2011) (*per curiam*) (quotation marks and citations omitted), *appeal granted in part*, 47 A.3d 1174 (Pa. 2012)

After the trial court's decision and the parties' submission of their appellate briefs, our Supreme Court decided **Conway**, which addressed whether subsequent purchasers of a home may raise a cause of action for breach of implied warranty of habitability. We state the facts in **Conway**, as set forth by our Supreme Court:

In September 2003, The Cutler Group, Inc.[1] . . . sold a new house in Bucks County to Davey and Holly Fields. After living in the house for three years, Mr. and Mrs. Fields sold the house to Michael and Deborah Conway . . . . In 2008, [the Conways] discovered water infiltration around some of the windows in the home, and, after consultation with an engineering and architectural firm, concluded that the infiltration was caused by several

---

[1] This party is also the Appellant in the instant case.

construction defects. On June 20, 2011, [the Conways] filed a one-count complaint against [The Cutler Group], alleging that its manner of construction breached the home builders' implied warranty of habitability recognized by this Court in **Elderkin v. Gaster**, 288 A.2d 771, 777 (Pa. 1972). [The Cutler Group] filed preliminary objections in the nature of a demurrer, arguing, *inter alia*, that, as a matter of law, the warranty recognized in **Elderkin** extends from the builder only to the first purchaser of a newly constructed home because there is no contractual relationship between the builder and second or subsequent purchasers of the home. Recognizing that courts have traditionally required a showing of privity of contract before permitting a party to proceed with a warranty claim, the trial court concluded that the question presented was "one of policy as to who will bear the burden for damages caused by latent defects . . . [in] relatively new residential dwellings." Trial Court Opinion, dated 4/18/12, at 6. The trial court sustained [The Cutler Group's] preliminary objections on the ground of lack of privity between the parties, and dismissed [the Conways'] complaint with prejudice. [The Conways] appealed to the Superior Court.

In a unanimous, published opinion, the Superior Court reversed. **Conway v. Cutler Group, Inc.**, 57 A.3d 155 (Pa. Super. 2012). . . .

[The Cutler Group] then petitioned for allowance of appeal in this Court, and we accepted the following issue for review:

> Did the Superior Court wrongly decide an important question of first impression in Pennsylvania when it held that any subsequent purchaser of a used residence may recover contract damages for breach of the builder's implied warranty of habitability to new home purchasers?

**Conway**, 2014 WL 4064261, at *1-*2 (footnotes and citation omitted).

The **Conway** Court agreed with The Cutler Group, held the Superior Court erred, and reversed, holding "that a subsequent purchaser of a previously inhabited residence may not recover contract damages for breach of the builder's implied warranty of habitability." *Id.* at *1. Our Supreme Court reasoned as follows:

> [W]e conclude that the question of whether and/or under what circumstances to extend an implied warranty of habitability to subsequent purchasers of a newly constructed residence is a matter of public policy properly left to the General Assembly. . . .
>
> It is well established that the courts' authority to declare public policy is limited.
>
>> In our judicial system[,] the power of courts to formulate pronouncements of public policy is sharply restricted; otherwise they would become judicial legislatures rather than instrumentalities for the interpretation of law. Generally speaking, the Legislature is the body to declare the public policy of a state and to ordain changes therein.
>>
>> *     *     *
>>
>> The right of a court to declare what is or is not in accord with public policy does not extend to specific economic or social problems which are controversial in nature and capable of solution only as the result of a study of various factors and conditions. It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring.
>
> *     *     *

> If, in the domain of economic and social controversies, a court were, under the guise of the application of the doctrine of public policy, in effect to enact provisions which it might consider expedient and desirable, such action would be nothing short of judicial legislation, and each such court would be creating positive laws according to the particular views and idiosyncrasies of its members. Only in the clearest cases, therefore, may a court make an alleged public policy the basis of judicial decision.
>
> ***Mamlin v. Genoe (City of Philadelphia Police Beneficiary Ass'n)***, 17 A.2d 407, 409 (Pa. 1941); ***see also Weaver v. Harpster***, 975 A.2d 555, 563 (Pa. 2009) (citing ***Mamlin***).
>
> ***Mamlin's*** reasoning, as reiterated in ***Weaver***, applies with force to the factual circumstances and arguments in this case. Accordingly, we decline to extend the implied warranty of habitability beyond its firm grounding in contract law. Under the facts of this case, where the builder-vendor sold a new home to a purchaser-user, we hold that an action for breach of the implied warranty requires contractual privity between the parties.

***Id.*** at *5 (footnote omitted).

Instantly, the facts of this case are identical to the facts in ***Conway***. In this case, Appellant sold a new home to the Furutas—purchasers-users— who then, in turn, sold the home to Appellees—subsequent-purchasers. ***See id.*** To paraphrase our Supreme Court, "[u]nder the facts of this case, where [Appellant] sold a new home to a purchaser-user, we hold that an action for breach of the implied warranty requires contractual privity between the parties." ***See id.*** Because Appellees purchased the home from the Furutas, contractual privity with Appellant is absent, and thus Appellees' cause of

action for breach of implied warranty must fail. ***See id.*** Accordingly, even after viewing the record in the light most favorable to Appellees, we hold the law compels a verdict in Appellant's favor and thus vacate the judgment, reverse the order denying Appellant's post-trial motion, and remand with instructions to the trial court to enter judgment in favor of Appellant. ***See Braun***, 24 A.3d at 890-91.

Judgment vacated. Order denying Appellant's post-trial motion reversed. Remanded with instructions to the trial court to enter judgment notwithstanding the verdict in Appellant's favor. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2014