J-A08007-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| R. DAVID AND SHERRI P. MITCHELL | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MEGILL HOMES, INC., MEGILL HOMES, LLC., MISTY MEADOWS HOMES, INC., WAYNE C. MEGILL, SCOTT M. MEGILL, AND BARBARA A. MEGILL | : | No. 1118 EDA 2020 |
| | : | |
| APPEAL OF: MISTY MEADOWS HOMES, INC., AND MEGILL HOMES, INC. | : | |

Appeal from the Judgment Entered June 15, 2020
In the Court of Common Pleas of Chester County
Civil Division at No(s):  No. 2015-04560-CT

| | | |
|---|---|---|
| R. DAVID AND SHERRI P. MITCHELL | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| MEGILL HOMES, INC., MISTY MEADOWS HOMES, INC., AND WAYNE C. MEGILL, MEGILL HOMES, LLC,  SCOTT M. MEGILL, AND BARBARA A. MEGILL | : | No. 1119 EDA 2020 |

Appeal from the Judgment Entered June 15, 2020
In the Court of Common Pleas of Chester County
Civil Division at No(s):  No. 2015-04560-CT

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.*

_____

* Former Justice specially assigned to the Superior Court.

J-A08007-21

MEMORANDUM BY PANELLA, P.J.:                    Filed: August 26, 2021

Appellants David and Sherri Mitchell claimed that Misty Meadows Homes, Inc., and Megill Homes, Inc. violated express and implied warranties regarding the quality of a home the Mitchells purchased. The trial court entered non-suit on the Mitchells' claims against Megill Homes, and the implied warranty of habitability and express warranty claims against Misty Meadows. However, the court entered judgment on a jury verdict for $150,000 against Misty Meadows and a bench verdict finding that Misty Meadows had violated the Pennsylvania Unfair Trade Practice and Consumer Protection Law ("UTPCPL"). After a procedural remand, the trial court denied the Mitchells' post-trial motions seeking a removal of the non-suits. The Mitchells filed this timely appeal, and Misty Meadows and Megill Homes filed cross-appeals. As we conclude the trial court erred in granting non-suit on the Mitchells' claim for breach of the implied warranty of workmanship, we reverse and remand for a new trial on that claim.

Misty Meadows and Megill Homes filed a cross-appeal, contending that the trial court erred in concluding that they had violated provisions of the UTPCPL. We conclude that precedent from this Court and the Supreme Court of Pennsylvania controls our outcome and we affirm that part of the judgment.

Misty Meadows, a real estate development company, purchased a parcel of land in a development known as "the Paddocks" in Chester County. Misty Meadows then contracted with Megill Homes to construct single family homes on the land.

- 2 -

David and Sherri Mitchell purchased a home from Misty Meadows and resided in that home for a decade. The Mitchells listed their home for sale and eventually accepted an offer of $500,000 from Tim and Linda Zirkel. The Zirkels' offer, however, was contingent upon the successful completion of a professional home inspection. Following the completion of the pre-sale home inspection, inspectors alerted the Zirkels to water damage in the home. As a result, the Mitchells discounted the sale price of the home by $150,000 to account for the cost of any renovations.

Shortly thereafter, the Mitchells initiated an action against Misty Meadows and Megill Homes. In their complaint, the Mitchells asserted claims for breach of contract, breach of express warranty, breach of implied warranty of habitability, breach of implied warranty of reasonable workmanship, and violations of the UTPCPL.

The case proceeded to a bifurcated trial, with the jury hearing the common law claims, and the trial court hearing the UTPCPL claim. At the close of the jury trial, the trial court entered non-suit on the Mitchells' claims against Megill Homes, and the implied warranty of habitability and express warranty claims against Misty Meadows. The jury found that Misty Meadows had breached the implied warranty of reasonable workmanship and agreement of sale and awarded damages of $150,000. The court then conducted a two-day bench trial after which it issued an order finding Misty Meadows had violated the UTPCPL and awarded additional attorneys' fees and costs.

The Mitchells filed a motion for removal of non-suit and reconsideration of the court's orders. However, during the pendency of that motion, the Mitchells filed a notice of appeal. This Court quashed the appeal because a final judgment had not been entered on the docket.

The Mitchells then filed a motion for leave to file an amended motion for post-trial relief. The trial court denied the Mitchells' motion, explaining that the Mitchells waived their right to obtain appellate review by filing a motion for reconsideration rather than a motion for post-trial relief. The Mitchells filed a notice of appeal. Following oral argument, this Court determined that the Mitchells' motion for reconsideration was the functional equivalent of a timely motion for post-trial relief and remanded the case for the trial court to address the substantive merits of the issues raised in the Mitchells' motion. ***See Mitchell v. Megill Homes, Inc.***, ___ A.3d ___, 2019 WL 6652032 (Pa. Super., filed December 6, 2019) (unpublished memorandum).

On remand, the trial court addressed the substantive merits of the Mitchells' post-trial motion and denied the motion. The Mitchells raise three issues on appeal, all challenging the trial court's denial of their post-trial motion for relief. Specifically, the Mitchells allege that the trial court improperly granted non-suit on their implied warranty of workmanship claim. They argue that the trial court erroneously relied upon ***Conway v. Cutler Group, Inc.***, 99 A.3d 67 (Pa. 2014), to support its conclusion that the implied warranty of workmanship does not extend to first user-purchasers such as them. ***See*** Appellants' Brief at 27.

- 4 -

In contrast, Megill Homes and Misty Meadows contend that the Mitchells waived their argument because they failed to raise their first user-purchaser theory of liability in the trial court. **See** Appellees' Brief at 25. Even if the Mitchells preserved their argument for appellate review, they argue that the trial court properly granted non-suit on the basis of lack of privity between the Mitchells and Megill Homes. **See id**., at 36.

We first consider whether the Mitchells preserved their argument for appellate review. Pennsylvania Rule of Civil Procedure 227.1 provides, in relevant part, that "post-trial relief may not be granted unless the grounds therefor . . . are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds." Pa.R.C.P. 227.1(b)(2).

Here, the Mitchells concede, albeit tacitly, that their motion for post-trial relief failed to specify how they preserved their challenge to the trial court's non-suit order. **See** Appellants' Reply Brief, at 8-9. However, the record shows that the Mitchells raised their first user-purchaser theory of liability in their brief in opposition to the motion for summary judgment. **See** Appellants' Reply Brief at 5-6. As this Court has explained, "where an appellant properly preserves its issues at pre-trial proceedings or at trial, and raises them in the post-trial motion so that the trial court understands the issues, any arguable violation of Rule 227.1 does not require [. . .] waiver." **Cnty of Delaware v. J.P. Mascaro & Sons, Inc.**, 830 A.2d 587, 590 (Pa. Super. 2003). Therefore,

- 5 -

even though the Mitchells' post-trial motion failed to fully conform to the requirements of Rule 227.1, we find that the Mitchells preserved their argument for appeal. *See id*.

We now turn to the merits of the Mitchells' claims. All of the Mitchells' claims challenge the trial court's entry of non-suit on their claim based on the implied warranty of workmanlike construction. *See*, *e.g.*, Mitchells' Brief, at 23. Non-suit was properly entered only if the Mitchells entirely failed to present evidence capable of establishing their claim:

> A motion for compulsory non-suit allows a defendant to test the sufficiency of a plaintiff['s] evidence and may be entered only in cases where it is clear that the plaintiff has not established a cause of action; in making this determination, the plaintiff must be given the benefit of all reasonable inferences arising from the evidence. When so viewed, a non-suit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action; it is the duty of the trial court to make this determination prior to the submission of the case to the jury. When this Court reviews the grant of a non-suit, we must resolve all conflicts in the evidence in favor of the party against whom the non-suit was entered.
>
> A compulsory non-suit is proper only where the facts and circumstances compel the conclusion that the defendants are not liable upon the cause of action pleaded by the plaintiff.

*Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P.,* 40 A.3d 1261, 1274 (Pa. Super. 2012) (citation omitted). This Court will reverse an order denying a motion to remove a non-suit where the trial court either abused its discretion or made an error of law. *See Brinich v. Jencka*, 757 A.2d 388, 402 (Pa. Super. 2000).

Here, the trial court concluded that non-suit was appropriate based upon the lack of evidence that the Mitchells were in contractual privity with Megill Homes. The court concluded that under **Conway v. Cutler Group, Inc.**, 99 A.3d 67 (Pa. 2014), a claim for breach of the implied warranty of workmanlike construction required such privity.

The Mitchells argue that **Conway** is explicitly distinguishable from the circumstances here, and that instead, **Spivack v. Berks Ridge Corp.**, 586 A.2d 402, 405 (Pa. Super. 1990) controls. They contend that under **Spivack**, they were not required to establish privity with Megill Homes.

A chronological review of the development of the doctrine of the implied warranty of workmanlike construction reveals that the resolution of this appeal is straightforward. We start by noting that the Supreme Court of Pennsylvania adopted the implied warranty of workmanlike construction in **Elderkin v. Gaster**, 288 A.2d 771, 777 (Pa. 1972). Under this doctrine, the builder of a newly constructed home implicitly warrants that the building is fit for habitation. **See id**. "It is the very nature and essence of the transaction between the parties that [the purchaser] will have a house … which is fit for him to come into as a dwelling house." **Id**., at 775.

This Court consistently applied the implied warranty to sales of newly constructed homes. **See**, **e.g.**, **Ecksel v. Orleans Const. Co.**, 519 A.2d 1021, 1026 (Pa. Super. 1987); **see also Tyus v. Resta**, 476 A.2d 427, 433 (Pa. Super. 1984). We have made clear that the warranty does not arise from the express terms of the sales contract. **See Ecksel**, at 1025. Moreover, any

attempt by the builder to disclaim the implied warranty must be specific and unambiguous. *See id*.

Thirty years ago, this Court expanded the application of the warranty in *Spivack*. There, the Spivacks purchased a not-yet constructed condominium from Breyer Woods. *See Spivack*, 586 A.2d at 404 n.2. After the home was built, the Spivacks filed suit against, among others, the general contractor responsible for building the home, Berks Ridge Corp., Inc. The trial court sustained Berks Ridge's preliminary objection, holding that the implied warranty did not apply where there was no contractual privity between Berks Ridge and the Spivacks.

This Court reversed. *See id*., at 405. "Privity of contract is not required to assert a breach of warranty claim against the builder of a new residential unit." *Id*. The court reasoned that where a home builder knew or should have known that they were selling the home to a party that would not use the home, the warranty necessarily extended to the first actual user. *See id*.

Twenty years later, the Supreme Court of Pennsylvania defined a limit to the applicability of the implied warranty of workmanlike construction. *See Conway*. There, the Cutler Group built and sold a home to the Fieldses, who lived in the home for three years. *See id*., 99 A.3d at 68. The Fieldses sold the home to the Conways. *See id*. Five years later, the Conways filed suit against the Cutler group. *See id*.

The Supreme Court began by distinguishing the Conways' position from the Spivacks'; while both were technically second purchasers, only the

Spivacks were the first users of the home. *See id*., at 667. After reviewing precedent from other jurisdictions, the court opined that the extension of the implied warranty of workmanlike construction to second and later users of a home was a matter for the legislature. *See id*., at 669-670. It reasoned that even though the implied warranty was not created by explicit promises in the agreement of sale, the implied warranty "was rooted in the existence of a contract – an agreement of sale – between the builder-vendor of a residence and the purchaser-resident." *Id*., at 665. As such, the court declined to extend the implied warranty to second and later users of a new home. *See id*., at 671.

Importantly, however, the court explicitly disclaimed any alteration of the holding in *Spivack*:

> As we have discussed … *supra*, the facts of this case are readily distinguishable from those of [*Spivack*], where the first purchaser of the new home was a developer who did not reside in or use the home. As the facts of *Spivack* are not before us, we decline to rule on the Superior Court's holding in that case.

*Conway*, 99 A.3d at 671 n.4. Accordingly, *Spivack* is still controlling precedent in this Court when it cannot be distinguished. *See Commonwealth v. Pepe*, 897 A.2d 463, 465 (Pa. Super. 2006).

Here, we can find no reason to distinguish *Spivack*. Megill Homes is a residential and commercial construction business owned and managed by Wayne C. Megill, Jr. and family. *See* N.T., Trial, 11/2/17, at 154. In 2001, the Megill family formed Misty Meadows to buy parcels of land in the Paddocks

and sell homes constructed on that land. *See id*., at 150-153. Although Misty Meadows did not have any employees, the company shared office space with Megill Homes as well as corporate officers. *See id*., at 152-153 and 155. What is more, Misty Meadows engaged in an exclusive partnership with Megill Homes, whereby Megill Homes would oversee the construction of residential homes in the Paddocks, and Misty Meadows would advertise, market, and hire real estate agents to sell the newly constructed homes. *See id*., at 157, 160 and 163. With each newly constructed home, Misty Meadows fully intended for its customers to benefit from the expertise and reputation of Megill Homes. *See id*., at 160.

Even though Misty Meadows and Megill Homes are separate corporate entities, it is clear from the record above that Megill Homes formed Misty Meadows to purchase vacant lots upon which Megill Homes could construct residential dwellings. Following completion of their work, Megill Homes would then use Misty Meadows as a conduit to market, advertise, and sell these homes to the general public. In the process of selling the homes, Wayne Megill, Jr. – namely as a principal of Megill Homes and a corporate officer of Misty Meadows – was authorized to bind Misty Meadows in all sales agreements. *See id*., at 153. The record therefore shows that Megill Homes had control over Misty Meadows and that the companies' businesses were intertwined to benefit Megill Homes' construction business.

Based on this structure, it is clear Megill Homes knew that Misty Meadows would not be the first residents of the newly constructed homes. As such, under *Spivack*, "any implied warranties must necessarily extend to the first user-purchaser." *Id*., at 405. Here, the Mitchells were the first user-purchaser.

Accordingly, the trial court erred in granting non-suit on the Mitchells' claim for breach of the implied warranty of workmanlike construction. Therefore, we reverse the judgment of non-suit and remand for a new trial on that claim.

Turning to Megill Homes's and Misty Meadow's issues on cross appeal, we note the first two address the trial court's construction of the UTPCPL. Our standard of review of statutory construction claims is plenary. *See Commonwealth v. Wilson*, 111 A.3d 747, 751 (Pa. Super. 2015). Our primary task is to ascertain legislative intent and implement it. *See id*. Generally, the plain wording of the statute is the best indicator of legislative intent, and we will not disregard unambiguous wording to reach a contrary result under a pretext of searching for the spirit of the statute. *See id*.

Here, while Cross-Appellants raise issues of statutory construction, our resolution is controlled by precedent. We therefore will not engage in independent statutory construction, except to the extent it is necessary to establish the context of controlling precedent.

In their first issue, Cross-Appellants contend that the court erred in concluding the Mitchells had standing to raise their claims under the UTPCPL. They argue that the Mitchells did not have standing for a private cause of action under the UTPCPL for a real estate transaction. **See** Appellee's Brief at 43. However, they concede that this Court has previously held to the contrary. **See Gabriel v. O'Hara**, 534 A.2d 488 (Pa. Super. 1987). They merely argue that **Gabriel** was wrongly decided. **See** Appellee's Brief, at 58.

As noted above, we are not empowered to overrule precedent established by a prior three-judge panel. **See Pepe**, 897 A.2d at 465. Therefore, Cross-Appellants' argument that the UTPCPL does not provide a private remedy based upon a real estate transaction does not merit relief. **See Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC**, 40 A.3d 145, 151 n.3 (Pa. Super. 2012).

Next, Cross-Appellants argue that the trial court erred by imposing strict liability on Misty Meadows for violations of the UTPCPL. Once again, we are bound by precedent contrary to Cross-Appellants' arguments.

The Supreme Court of Pennsylvania, in addressing the UTPCPL's catch-all provision, which is not at issue here, observed that the absence of an explicit state-of-mind requirement under the definitions of "unfair methods of competition" and "unfair and deceptive acts or practices" indicates strict liability:

> The General Assembly knows well how to add a state of mind requirement to a statute. Within the [UTP]CPL itself, numerous

provisions require intent or knowledge before a violation will be found. ***See***, ***e.g.***, 73 P.S. § 201-2(4)(ix) (requiring proof of intent not to sell goods and services as advertised); ***id***. § 201-2(4)(x) (requiring proof of intent not to supply public demand); ***id***. § 201-2(4)(xv) (requiring proof that the vendor made knowing misrepresentations). The absence of any reference to the actor's state of mind in the catch-all provision demonstrates that the legislature did not intend to require proof of the actor's state of mind. "[W]here a section of a statute contains a given provision, the omission of such a provision from a similar section is significant to show a different **\*651** legislative intent." ***Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n***, 603 Pa. 452, 985 A.2d 678, 684 (2009). It is not for the courts to add a state of mind requirement to the statute where the legislature did not choose to do so. ***See Commonwealth v. Rieck Inv. Corp.***, 419 Pa. 52, 213 A.2d 277, 282 (1965) (courts should not add to a statute a requirement that the legislature chose not to include).

***Gregg v. Ameriprise Fin., Inc.***, 245 A.3d 637, 650–51 (Pa. 2021).

The three violations at issue here are based upon three definitions that similarly do not include an explicit state-of-mind requirement:

(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

…

(xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;

…

(xvi) Making repairs, improvements or replacements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing;

- 13 -

73 P.S. § 201-2(4)(vii), (xiv), (xvi). While these definitions were not directly at issue in **Gregg**, we can find no reason to exempt them from the reasoning employed there.

> It is the vendor—not the consumer—that is charged with complying with the [UTP]CPL, as the vendor is in a better position to determine whether the representation might be deceptive. Strict liability for such violations is consistent with the legislative mandate to eradicate the use of unfair and deceptive conduct in consumer transactions.

**Gregg**, 245 A.3d at 650. Accordingly, Cross-Appellants' second argument on appeal merits no relief.

Finally, Cross-Appellants contend that the court's findings of violations of the UTPCPL were "not supported by substantial evidence." **See** Appellee's Brief, at 70. We begin by noting Cross-Appellants do not provide a standard of review for these arguments. We are therefore unsure whether they intended to challenge the sufficiency of the evidence supporting the trial court's findings, or the weight of the evidence. As Cross-Appellants do not request a new trial, but seek an outright reversal of the verdict, we will treat these arguments as challenges to the sufficiency of the evidence. **See McFeeley v. Shah**, 226 A.3d 582, 594 (Pa. Super. 2020) (noting that a successful weight of the evidence challenge grants the challenger a new trial).

We review a challenge to a non-jury verdict to determine whether the court's findings are supported by evidence of record. **See Stokes v. Gary Barbera Enterprises, Inc.**, 783 A.2d 296, 297 (Pa. Super. 2001). The weight given to any evidence is within the exclusive province of the trial court, who

may believe none, part, or all of the evidence presented. *See id*. In doing so, we accept all inferences and credibility determinations in favor of the prevailing party, unless the court explicitly indicates otherwise. *See id*.

Cross-Appellants first sub-argument is that the evidence was insufficient to establish a violation of 73 P.S. § 201-2(4)(vii) and (xiv), as they contend the UTPCPL does not apply to real estate transactions. This is simply Cross-Appellants' statutory construction issue rephrased as a sufficiency challenge. As we have already concluded that precedent establishes that the UTPCPL applies to residential real estate transactions, this claim merits no relief.

In their second sub-argument, Cross-Appellants contend the evidence was insufficient to establish that they failed to honor a written warranty as required by 73 P.S. § 201-2(4)(xiv). They note that the Mitchells acknowledged that the written warranties were for a total of two years after purchase, and that Cross-Appellants promptly responded to any complaints during those two years. However, this argument fails to acknowledge the basis for the trial court's conclusion that Cross-Appellants had failed to honor the written warranty.

The court found that while Cross-Appellants responded to the Mitchells' complaints during the first two years, "[t]he expert testimony at trial revealed … that the efforts undertaken were insufficient and did not comply with the terms of the written warranty." Trial Court Opinion, 4/27/18, at 22. As Cross-

Appellants do not raise any argument based on subsection (xiv) that this finding was not supported by competent evidence, we conclude Appellees are entitled to no relief regarding 73 P.S. § 201-2(4)(xiv).

In their final sub-argument, Cross-Appellants contend the evidence of record does not support the court's conclusion that they violated 73 P.S. § 201-2(4)(xvi). Cross-Appellants present two sub-arguments challenging this conclusion.

First, Cross-Appellants contend that the written warranty did not contain any guarantees regarding the quality of any repairs undertaken pursuant to the warranty. As a result, Cross-Appellants argue, there could be no evidence that the repairs were of a quality inferior to the standard of that agreed to in the written warranty. However, another section of the agreement of sale, section 14, supplies the requisite standards of quality: "All work shall be done in a consistent manner within prevailing industry standards for residential construction and in compliance with the building products manufacturers' installation recommendations. In addition, all work shall be done in accordance with applicable building codes, regulations and laws." As the agreement of sale does provide for a standard of quality for all work done under its auspices, Cross-Appellants are due no relief on this argument.

In their final sub-argument, Cross-Appellants contend that the sub-standard repair work was not discovered until after the Mitchells had sold the home. However, this argument fails to acknowledge the basis for the Mitchells'

claims. While the exact cause and extent of the water damage in the home was not clear until repairs were started by the subsequent purchasers, the Zirkels, the court found that the Mitchells proved that they had to reduce the sales price of the home after the home inspection revealed the water damage. Since the Mitchells trace the loss of the sales price to the water damage identified in the home inspection, and further that the water damage arose from Cross-Appellants' failure to perform adequate repairs, it does not matter that the cause of the water damage was not discovered until later. Cross-Appellants' final argument merits no relief.

Judgment reversed in part and affirmed in part. Case remanded for a new trial on the Mitchells' claim that Megill Homes breached the implied warranty of workmanlike construction. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/21